OPINION
{¶ 1} Defendant-appellant, Brian Hyland, appeals the decision of the Butler County Court of Common Pleas to sentence him to five years in prison after he pled guilty to burglary in violation of R.C. 2911.12(A)(2). We affirm the trial court's sentencing decision.
 {¶ 2} Appellant was indicted on one count of aggravated burglary, a first-degree felony, in violation of R.C.2911.11(A)(1). He pled guilty to burglary in violation of R.C.2911.12(A)(2), a second-degree felony. On March 29, 2005, the trial court held a sentencing hearing. At the hearing, the court indicated that it had reviewed the presentence investigation report (PSI), along with letters submitted on appellant's behalf from family and friends. Appellant and his attorney both spoke on appellant's behalf. The detective who investigated the crime also spoke and discussed the facts of the incident and its effect on the victim.
 {¶ 3} According to the information in the PSI, appellant was involved in a burglary with two other people. Appellant, Sarah Cabrera and Jessica Casey were getting high, when they ran out of drugs and money. Cabrera told appellant and Casey that her grandmother had velvet bags of money in a file cabinet at home. Together, the three individuals planned a burglary of Cabrera's grandmother's home in order to get money to buy drugs. Cabrera supplied information about her grandmother and the house, and the three drove to Cabrera's grandmother's house together. The trio made sure that no one other than the victim was home and also that the neighbors on both sides of the house were not home.
 {¶ 4} Cabrera waited in the vehicle, and Casey pretended to be at the home to help the victim with her medication. The victim let Casey enter, and appellant followed. They removed the victim's medical alert necklace. Appellant told the victim that if she cooperated she would not be hurt and told Casey to "keep an eye on the bitch and don't let her out this door." Casey stayed near the victim while appellant searched for items of value. The two took a gun, money, jewelry, coins and other various items. As they left, appellant told the victim, "I'm going to stand outside this door until she (Casey) gets into the car. If I hear you, I am going to fucking hurt you."
 {¶ 5} The trial court sentenced appellant to five years in prison. On appeal, appellant raises four assignments of error, all related to the trial court's sentencing decision.
 {¶ 6} Assignment of Error No. 1:
 {¶ 7} "THE RECORD DOES NOT SUPPORT THE TRIAL COURT'S FINDINGS RELIED UPON TO SENTENCE HYLAND."
 {¶ 8} Assignment of Error No. 2:
 {¶ 9} "THE TRIAL COURT'S SENTENCE VIOLATED HYLAND'S CONSTITUTIONAL RIGHTS BY IMPOSING A SENTENCE THAT EXCEEDED THE STATUTORY MAXIMUM SENTENCE BASED ON ADDITIONAL FACTS THAT WERE NOT SUBMITTED TO A JURY OR ADMITTED BY THE DEFENDANT."
 {¶ 10} Assignment of Error No. 3:
 {¶ 11} "THE TRIAL COURT MATERIALLY RELIED UPON IMPROPERLY SUBMITTED STATEMENTS BY THE STATE DURING THE DISPOSITION HEARING."
 {¶ 12} Assignment of Error No. 4:
 {¶ 13} "HYLAND'S SENTENCE VIOLATES THE GENERAL ASSEMBLY'S INTENT TO MINIMIZE THE UNNECESSARY BURDEN ON STATE AND LOCAL GOVERNMENT RESOURCES."
 {¶ 14} We begin with appellant's third assignment of error, which involves statements made at the sentencing hearing by the detective who investigated the case. The detective stated that the crime involved forethought and planning, as the trio stopped to buy rubber gloves and appellant used a mask to conceal his identity. He stated that the victim was elderly, had a heart condition and uses a walker to get around. He stated that after Casey got the victim to open the door and let her in, appellant rushed in behind Casey, shoved the victim to the ground and told her to cooperate and she wouldn't be hurt. The detective stated that the victim's medical alert necklace was "yanked" from around her neck so she could not call emergency services. While appellant was rummaging through the house, Casey took the jewelry the victim was wearing, and the victim thought at that time that she was going to die. The detective further stated that as appellant was leaving, he told the victim not to go to the door or call the police for five minutes, or he would shoot her.
 {¶ 15} The detective indicated that the victim was "shattered" and felt like the sanctity of her home had been violated. He stated that the victim thought she was going to die, and it took some time for her to summon the courage to call the police. The detective also discussed the investigation and the other two codefendants' immediate acceptance of responsibility and confessions. He mentioned appellant's refusal to cooperate with the investigation and telling detectives to "give it their best shot" to prove his involvement.
 {¶ 16} Appellant argues that the trial court should not have relied on the detective's statements that touched on the impact of the crime on the victim and because the comments were "seemingly motivated by a personal ambition that was captured within his closing remarks to the trial court." He argues that the trial court erred in using these statements to make its findings that the injury was worsened by the victim's mental condition and age and that the victim suffered serious physical harm. He contends that the impact of the crime on the victim should only have been introduced by the state through a victim impact statement and the record does not reflect that one was prepared nor shared with appellant and his counsel.
 {¶ 17} We find no merit to appellant's arguments in this assignment of error for several reasons. First, the record shows that not only did appellant's counsel fail to object to these statements, but instead, specifically stated that he had no disagreement with the detective's statements. After the detective spoke, appellant's counsel stated, "I may add, Your Honor, we don't disagree with anything that the officer, in fact, said, but I'd like to add the officer's viewpoint of refusal to cooperate is nothing more than my client exercised his constitutional rights."
 {¶ 18} Second, appellant has not cited any authority that a trial court's findings regarding the victim must come from the victim herself. The rules of evidence do not strictly apply to sentencing hearings. State v. Cook, 83 Ohio St.3d 404, 425,1998-Ohio-291. Evid.R. 101(C) states that the rules of evidence, including the hearsay rule, do not apply to certain criminal proceedings, including sentencing. Accordingly, the trial court may rely on reliable hearsay in its sentencing decision. State v. Postway, Butler App. No. CA2002-06-154, 2003-Ohio-2689. The Revised Code specifically provides for inclusion of a victim impact statement in the PSI and requires consideration of the victim impact statement by the trial court when making its sentencing decision. R.C. 2947.051. Moreover, the Revised Code provides that at the sentencing hearing, "any other person may present information relevant to the imposition of sentence in the case." R.C. 2929.19(A)(1).
 {¶ 19} Finally, contrary to appellant's argument, a victim impact statement was submitted with the PSI. The information in this statement is similar to the statements of the detective at the hearing. The statement gives the victim's date of birth, and her reaction to the crime. She stated that she is being treated by a therapist, is now afraid to open her door, and is "nervous and jumpy" after the robbery. She indicated that appellant threatened to kill her as she was being robbed and that he was the only one who made a threat on her life. Accordingly, we find no merit to appellant's arguments that the court relied on improperly submitted evidence in making its determinations. Appellant's third assignment of error is overruled.
 {¶ 20} In his first assignment of error, appellant contends that the trial court's findings do not support the imposition of a nonminimum sentence. Specifically, appellant argues that it was error for the trial court to sentence appellant to the same sentence as Casey, because the two had dissimilar criminal histories.
 {¶ 21} As mentioned above, appellant was convicted of burglary in violation of R.C. 2911.12(A)(2), a second-degree felony, which involves a possible prison term of two, three, four, five, six, seven or eight years. R.C. 2929.14(A)(2). The Revised Code provides that when an offender has not previously served a prison term, the court shall impose the shortest prison term authorized for the offense unless it finds that the shortest prison term will demean the seriousness of the offense or will not adequately protect the public from future crime by the offender or others. R.C. 2929.14(B).
 {¶ 22} After stating that it had considered the PSI and submitted statements, and after listening to the statements of appellant, his attorney and the detective on the case, the trial court stated that there were several factors it had considered in sentencing. The court first discussed recidivism, finding that there was one factor, a prior history of criminal convictions, that weighed in favor of recidivism as more likely. However, the court noted that the prior conviction was in January 1988, and was for furnishing false ID to buy beer. It stated that the prior conviction was a "weak factor" and a "slight item" but that it was considered. The Court then indicated that two factors were present indicating recidivism was unlikely. Specifically, the court noted that appellant had not been adjudicated delinquent prior to the offense, and had been a law-abiding person for several years prior to the offense, as far as convictions were concerned.
 {¶ 23} The court then considered the seriousness factors and found three factors indicating that this was a more serious form of the offense. The court found the injury to the victim was worsened by her mental condition and age, that the victim suffered serious psychological harm as a result of the offense, and that the offense was committed as part of an organized criminal activity. The court found that none of the factors indicating the offense was less serious applied.
 {¶ 24} The court then discussed uniformity of sentences, another factor it was required to consider. The court stated that uniformity in sentences should not be mechanical, but involved looking at the factors. The court then stated, "[a]nd having a minimal record is a factor that is certain, but the very essence of the crime itself, and the other defendants who are involved in the crime, the sentences that the other defendants have received[,] all of that is part of a package, which is an important package for the public." The court continued, "[t]here is [sic] multiple purposes of sentencing. It is to deal with the individual, and it is also a message to the public and we talk about protecting the public from future crimes that this person or other people as well, and for that sake there need[s] to be a semblance of uniformity. And I do take seriously the information that [appellant's attorney] has provided to the Court that the background of these codefendants are not the same. But I also have to take seriously that among the three people that were involved, the one who was the threatening one involved one of the two most directly involved is the defendant that stands before me today."
 {¶ 25} The court then discussed Cabrera and the "despicable" nature of planning a crime against her grandmother. The court stated that she did not actually enter the house, and received a three-year sentence. The court then stated that the other person who took an active role and went into the house received a five-year sentence.
 {¶ 26} The court concluded, "[a]nd linking * * * all of that together and trying to craft a sentence and balancing out the (inaudible) record of the co-defendants but also your more active role in what was going on than the person in the car, and your more overt threatening behavior while in the house than the woman that was with you in the house. Balancing those things together, you are going to receive the same sentence as the other person in the house. The sentence is five years of prison."
 {¶ 27} The court then made findings that the minimum sentence would demean the seriousness of the offense and would not adequately protect the public. On appeal, appellant contends that these findings were not supported by the evidence. We disagree. As discussed in the previous assignment of error, the factors and evidence considered by the trial court regarding the victim were properly considered. The court specifically discussed the factors that made the offense more serious, and how appellant was the only one of the three who behaved in a threatening manner. It also discussed the need to protect the public from future crime, not only from appellant, but from others as well.
 {¶ 28} We also find no merit to appellant's argument that because his criminal record is not as extensive as Casey's, they should not have received the same sentence. Although part of the purposes of felony sentencing includes a consideration that the sentence imposed is consistent with sentences imposed for similar crimes committed by similar offenders, it does not require that an offender with a less extensive criminal history automatically receive a lesser sentence than an offender convicted of the same crime who has a more extensive criminal history.
 {¶ 29} Consistency does not necessarily mean uniformity, but rather, aims at similar sentences. State v. Montgomery,
Clermont App. No. CA2004-06-047, 2005-Ohio-2371. Consistency accepts divergence within a range of sentences and takes into consideration the trial court's discretion to weigh statutory factors. Id. "Consistency requires a trial court to weigh the same factors for each defendant, which will ultimately result in an outcome that is rational and predictable." State v. Quine,
Summit App. No. 20968, 2002-Ohio-6987, ¶ 12-13. Under this meaning of consistency, two defendants convicted of the same offense with a similar history of recidivism could properly be sentenced to different terms of imprisonment. Id.
 {¶ 30} This court has previously held that, given this principle, the only way for an appellant to "demonstrate that his sentence was `inconsistent,' that is, contrary to law within the meaning of R.C. 2929.11(B) is if he establishes that the trial court failed to properly consider the factors and guidelines contained in R.C. 2929.12, R.C. 2929.13 and R.C. 2929.14."Montgomery at ¶ 29, quoting Quine at ¶ 12-13.
 {¶ 31} Therefore, because the trial court properly considered the required factors, we find that appellant has failed to establish that his sentence is inconsistent, even though his criminal record is not the same as Casey's. The trial court provided sufficient reasons relating to the seriousness of the offense, the harm to the victim, and appellant's singular role in threatening the victim, to support its findings. Appellant's first assignment of error is overruled.
 {¶ 32} In his fourth assignment of error, appellant contends that his sentence violates the general assembly's intent to minimize the unnecessary burden on state and local government resources. Specifically, appellant argues that because of the high cost of housing prison inmates, the cost of housing him in prison beyond the minimum sentence creates an unnecessary burden on state and local resources.
 {¶ 33} In State v. Ober (Oct. 10, 1997), Greene App. No. 97CA0019, the Second District considered this same issue. In rejecting the argument, the court stated: "Ober is correct that the `sentence shall not impose an unnecessary burden on state or local government resources.' R.C. 2929.19(A). According to criminal law experts, this resource principle `impacts on the application of the presumptions also contained in this section and upon the exercise of discretion.' Griffin Katz, Ohio Felony Sentencing Law (1996-97), 62. Courts may consider whether a criminal sanction would unduly burden resources when deciding whether a second-degree felony offender has overcome the presumption in favor of imprisonment because the resource principle is consistent with the overriding purposes and principles of felony sentencing set forth in R.C. 2929.11. Id."
 {¶ 34} The Ober court concluded that "[a]lthough resource burdens may be a relevant sentencing criterion, R.C. 2929.13(D) does not require trial courts to elevate resource conservation above the seriousness and recidivism factors. Imposing a community control sanction on Ober may have saved state and local government funds; however, this factor alone would not usually overcome the presumption in favor of imprisonment." Id.
 {¶ 35} Several other appellate courts considering this issue have reached the same conclusion. See, e.g., State v. Brooks
(Aug. 18, 1998), Franklin App. No. 97APA-11-1543; State v.Stewart (Mar. 4, 1999), Cuyahoga App. No. 74691; State v. Fox
(Mar. 6, 2001), Wyandot App. No. 16-2000-17; State v. Miller,
Ashland App. No. 04-COA-003, 2004-Ohio-4636. We agree with the reasoning of the Ober court and other courts considering this issue and find no merit to appellant's argument. Appellant's fourth assignment of error is overruled.
 {¶ 36} Finally, in his second assignment of error, appellant contends that the trial court erred in sentencing him to a nonminimum sentence. He argues that the imposition of a nonminimum sentence violated his constitutional rights pursuant to Blakely v. Washington (2004), 542 U.S. 296, 124 S.Ct. 2531, because the trial court made findings beyond the facts admitted during his plea to enhance his sentence beyond the statutory range. He contends that the language in R.C. 2929.14(B) provides that the statutory maximum for an offender who has never been to prison is the minimum sentence.
 {¶ 37} This court has previously rejected the same argument, finding that the statutory limitation contained in R.C.2929.14(B) for an offender who has never been to prison is not the equivalent of a statutory maximum as discussed in Blakely.State v. Farley, Butler App. No. CA2004-04-085, 2005-Ohio-2367. Accordingly, appellant's second assignment of error is overruled.
 {¶ 38} Judgment affirmed.
Walsh and Young, JJ., concur.