[Cite as *State v. Bittner*, 2019-Ohio-3834.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY


| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2019-01-001 |
| | : | O P I N I O N |
| - vs - | | 9/23/2019 |
| | : | |
| JASON M. BITTNER, | : | |
| Appellant. | : | |


CRIMINAL APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
Case No. 18CR34047


David P. Fornshell, Warren County Prosecuting Attorney, Kirsten A. Brandt, 520 Justice Drive, Lebanon, Ohio 45036, for appellee

The Law Offices of Steven R. Adams, LLC, Steven R. Adams, 8 West Ninth Street, Cincinnati, Ohio 45202, for appellant


**M. POWELL, J.**

{¶ 1} Appellant, Jason Bittner, appeals the maximum prison sentence he received in the Warren County Court of Common Pleas after he pled guilty to a second-degree felony charge of child endangering.

{¶ 2} As of March 2018, appellant was a chiropractor and the father of two-year-old

and three-month-old daughters. Appellant was indicted on March 16, 2018, on two counts of child endangering and one count of felonious assault. The charges stemmed from allegations that on February 26, 2018, appellant violently shook his infant daughter (the "victim") when he became angry at her for crying. As a result, the victim suffered severe injuries to her brain and broken bones. Over the next two days, the victim experienced vomiting and seizures. Despite the victim's obvious severe injuries, appellant did not seek medical treatment for the child until February 28, 2018, two days later.

{¶ 3} On October 11, 2018, appellant pled guilty to a second-degree felony count of child endangering in violation of R.C. 2919.22(B)(1). The other two counts were dismissed. A sentencing hearing was scheduled for December 4, 2018, and the trial court ordered that a presentence-investigative report ("PSI") be prepared.

{¶ 4} Prior to the sentencing hearing, appellant submitted a sentencing memorandum in which he asserted that either a community control or minimum prison sentence would achieve the purposes of sentencing in this case. Appellant argued that: his conduct was not more serious than conduct normally constituting the offense of child endangering; his inability to console the victim "who was endlessly crying and screaming," combined with additional stress from his struggling business and other commitments, "absolutely provoked [him] into committing [the] crime"; he was extremely remorseful and accepted responsibility for his actions; and he was at a low risk to reoffend.

{¶ 5} At the sentencing hearing, the state presented the testimony of Dr. Kathi Makoroff, a 21-year pediatrician specialized in child abuse, who had examined and treated the victim at Children's Hospital. Dr. Makoroff testified that the victim's injuries included 28 rib fractures that were consistent with squeezing around the ribcage. Some of the rib fractures were new. Others showed signs of healing, indicating they had occurred at least seven to ten days prior to February 28, 2018, the day the victim was brought to the hospital.

Dr. Makoroff further testified that the victim was hospitalized for over a week and continues to receive medical treatment and therapy for her injuries. Finally, Dr. Makoroff expressed the opinion that while the degree of the victim's impairment is unknown, her brain injury is permanent as the victim suffered extensive loss of brain tissue, and she will likely have significant delays in language and motor and cognitive skills.

{¶ 6} In support of a community control sentence, defense counsel argued that with the exception of two misdemeanors, appellant had led a law-abiding life and was an upstanding leader and mentor to people, was deeply remorseful, presented an extremely low risk of recidivism, and emotionally collapsed and snapped during a "small window" of his life when he was unable to comfort and console the crying victim. Defense counsel further cited a forensic psychological evaluation of appellant, conducted between May and October 2018, which indicated that appellant was abused as a child, suffered undiagnosed and untreated mental illnesses, and had a mental breakdown on the day of the incident. Defense counsel indicated that the shaking of the victim was an isolated incident.

{¶ 7} Appellant then addressed the trial court. Appellant acknowledged that his actions were "so wrong [and] deplorable," explained that he "couldn't handle the [victim's] constant screams on top of everything else that was breaking down in [his] life," and asked the court to give him a chance and the opportunity to prove himself.

{¶ 8} Upon considering the purposes and principles of sentencing in R.C. 2929.11 and the seriousness and recidivism factors in R.C. 2929.12, and reviewing the PSI, Dr. Makoroff's testimony, appellant's sentencing memorandum, and his psychological evaluation, the trial court sentenced appellant to a maximum eight-year prison term. In sentencing appellant, the trial court found that while appellant "may have a low rate of recidivism," his actions required "a very harsh punishment." The trial court further found that

- 3 -

[W]e will never know the true extent of [the victim's] injuries, because * * * we will never know what her true potential was, prior to those days when you shook her.

[Y]our sentence will long be over with and [the victim] will continue to live with whatever disadvantage or disability that you have inflicted upon her. I can't help but think that this abuse was not a one time thing by the doctor's testimony that this occurred on at least one or more occasion[s] because of the varying degrees of healing of the ribs. That tells me something. This was not a one time snap by you. And, then on top of all that, for you to prevent your then wife from seeking medical attention for your young daughter, because of your pride and arrogance, and despite what you may think, your education and profession and your standing in the community, you are held to a higher standard. You know better. You were a medical professional.

{¶ 9} Appellant now appeals his sentence, raising four assignments of error.

{¶ 10} An appellate court reviews the imposed sentence according to R.C. 2953.08(G)(2), which governs all felony sentences. *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, ¶ 1. Pursuant to that statute, an appellate court does not review the sentencing court's decision for an abuse of discretion. *Id.* at ¶ 10. Rather, R.C. 2953.08(G)(2) provides that an appellate court can modify or vacate a sentence only if the appellate court finds by clear and convincing evidence that the record does not support the trial court's findings under relevant statutes or that the sentence is otherwise contrary to law.

{¶ 11} A sentence is not clearly and convincingly contrary to law where the trial court "considers the principles and purposes of R.C. 2929.11, as well as the factors listed in R.C. 2929.12, properly imposes postrelease control, and sentences the defendant within the permissible statutory range." *State v. Ahlers*, 12th Dist. Butler No. CA2015-06-100, 2016-Ohio-2890, ¶ 8. Thus, this court may increase, reduce, or otherwise modify a sentence only when it clearly and convincingly finds that the sentence is either contrary to law or unsupported by the record. *Marcum* at ¶ 7.

- 4 -

{¶ 12} Assignment of Error No. 1:

{¶ 13} THE SENTENCE IMPOSED BY THE TRIAL COURT WAS CONTRARY TO LAW WHERE IT FAILED TO CONSIDER THE PURPOSES AND PRINCIPLES OF FELONY SENTENCING.

{¶ 14} Appellant argues the trial court failed to comply with R.C. 2929.11 because the court ignored two of the three overriding purposes of felony sentencing, namely, protecting the public from future harm and rehabilitation of the offender, when it sentenced appellant to a maximum eight-year prison term.

{¶ 15} The purposes of felony sentencing are "to protect the public from future crime by the offender and others, to punish the offender, and to promote the effective rehabilitation of the offender using the minimum sanctions that the court determines accomplish those purposes without imposing an unnecessary burden on state or local government resources." R.C. 2929.11(A). "To achieve those purposes, the sentencing court shall consider the need for incapacitating the offender, deterring the offender and others from future crime, rehabilitating the offender, and making restitution to the victim of the offense, the public, or both." *Id.*

{¶ 16} "[A] trial court 'fulfills its duty under [R.C. 2929.11] by indicating that it has considered the relevant sentencing factors.'" *State v. Clinton*, 153 Ohio St.3d 422, 2017-Ohio-9423, ¶ 243, quoting *State v. Smith*, 8th Dist. Cuyahoga No. 100206, 2014-Ohio-1520, ¶ 14. "The court 'need not go through each factor on the record - it is sufficient that the court acknowledges that it has complied with its statutory duty to consider the factors without further elaboration.'" *Clinton* at ¶ 243, quoting *Smith* at ¶ 14. "In fact, consideration of the appropriate factors set forth in R.C. 2929.11 can be presumed unless the defendant affirmatively shows to the contrary." *Clinton* at ¶ 243; *State v. Wright*, 8th Dist. Cuyahoga No. 106175, 2018-Ohio-965, ¶ 16.

{¶ 17} At the sentencing hearing and in its sentencing entry, the trial court expressly stated it considered the purposes and principles of felony sentencing under R.C. 2929.11. The trial court's statements are therefore sufficient to satisfy the sentencing court's obligations under the law. *State v. Thomas*, 8th Dist. Cuyahoga No. 107116, 2019-Ohio-790, ¶ 25. Moreover, appellant has not affirmatively shown that the trial court failed to consider the purposes and principles of felony sentencing under R.C. 2929.11. The trial court, therefore, complied with the requirements of R.C. 2929.11 before sentencing appellant. *Clinton* at ¶ 243; *Wright* at ¶ 19; *State v. Dixon*, 10th Dist. Franklin No. 15AP-432, 2015-Ohio-5277, ¶ 28.

{¶ 18} We note appellant's assertion that R.C. 2929.11 does not require or indicate that any purpose of felony sentencing be prioritized above another. Appellant suggests this means the purposes should be weighed equally. To the contrary, the fact that R.C. 2929.11 does not prioritize the purposes of felony sentencing suggests that a sentencing court may place such weight on each of the purposes as the circumstances of the case require. Although appellant disagrees with the weight the trial court gave to the purposes and factors set forth in R.C. 2929.11(A), the record shows that the trial court considered the requirements of R.C. 2929.11(A) before imposing sentence. *Dixon* at ¶ 28.

{¶ 19} Appellant's first assignment of error is overruled.

{¶ 20} Assignment of Error No. 2:

{¶ 21} THE SENTENCE IMPOSED BY THE TRIAL COURT WAS CONTRARY TO LAW, WHERE THE TRIAL COURT BASED ITS SENTENCE ON UNCHARGED CONDUCT.

{¶ 22} Appellant argues that his prison sentence is contrary to law because the trial court improperly considered a dismissed charge of child endangering as well as uncharged and unproven conduct that he had injured the victim on another occasion. Appellant bases

- 6 -

his argument on the trial court's following statements at sentencing:

> I can't help but think that this abuse was not a one time thing by the doctor's testimony that this occurred on at least one or more occasion[s] because of the varying degrees of healing of the ribs. That tells me something. This was not a one time snap by you. And, then on top of all that, for you to prevent your then wife from seeking medical attention for your young daughter, because of your pride and arrogance[.]

The dismissed child endangering charge related to appellant's failure to seek medical treatment for the victim for two days.

{¶ 23} Ohio law is clear that "[u]nindicted acts or not guilty verdicts can be considered in sentencing without resulting in error when they are not the sole basis for the sentence." *State v. Thomas*, 8th Dist. Cuyahoga No. 101263, 2014-Ohio-5153, ¶ 27; *State v. Reinthaler*, 7th Dist. Mahoning No. 16 MA 0170, 2018-Ohio-2483, ¶ 13. Moreover, the rules of evidence do not apply in sentencing hearings. *Thomas* at ¶ 27. Consequently, "[c]ourts have historically been permitted to consider hearsay evidence, evidence of an offender's criminal history, the facts concerning charges dismissed, and even offenses for which charges were not filed, but were addressed in the presentence investigation." *State v. Ropp*, 3d Dist. Union No. 14-13-21, 2014-Ohio-2462, ¶ 4. When a defendant's convictions result from a plea bargain, the plea bargain "does not preclude the trial court's consideration of the underlying facts" in determining the appropriate sentence to impose. *State v. Clayton*, 8th Dist. Cuyahoga No. 99700, 2014-Ohio-112, ¶ 18. Thus, charges that were dismissed as part of a plea agreement and the facts related to those charges are valid sentencing considerations. *State v. Wiles*, 59 Ohio St.3d 71, 78 (1991); *State v. Edwards*, 8th Dist. Cuyahoga No. 85908, 2006-Ohio-2315, ¶ 43; *State v. Bodkins*, 2d Dist. Clark No. 10-CA-38, 2011-Ohio-1274, ¶ 43.

{¶ 24} We find that the trial court properly considered appellant's failure to seek medical treatment for the victim for two days despite the obvious severity of her injuries.

Appellant was originally indicted on three felony counts, including one count of child endangering for creating a substantial risk to the health or safety of a child during the time period of February 26, 2018, through February 28, 2018. Although the charge was dismissed as part of the plea agreement, the trial court was allowed to take into account the dismissed charge and its underlying facts in sentencing appellant. *Clayton* at ¶ 18; *Edwards* at ¶ 43. The PSI further provided evidence that appellant intentionally delayed seeking medical treatment for the victim for two days. *Thomas* at ¶ 27; *Ropp* at ¶ 4.

{¶ 25} Furthermore, appellant's failure to seek medical treatment for the victim was a relevant and significant factor relating to the R.C. 2929.12(B)(2) seriousness factor of whether "[t]he victim of the offense suffered serious physical, psychological, or economic harm as a result of the offense." Appellant's failure to seek medical treatment for the victim certainly exacerbated her suffering and the physical harm she suffered.

{¶ 26} We likewise find no error in the trial court's consideration of Dr. Makoroff's testimony that the victim displayed signs of healing fractures, indicating that appellant had previously abused the victim.

{¶ 27} Appellant takes issue with the fact that Dr. Makoroff was not qualified as an expert in radiology or orthopedics. However, the record shows that Dr. Makoroff is a 21-year pediatrician, is board certified in child abuse pediatrics, including physical abuse, and evaluates between five and ten children per day. At sentencing, Dr. Makoroff testified on direct examination that the victim displayed signs of healing fractures, indicating that these fractures had occurred at least a week before the victim was brought to the hospital. Appellant neither objected to the pediatrician's opinion based upon her lack of qualifications nor moved to have her testimony stricken.

{¶ 28} On cross-examination, appellant initially did not question Dr. Makoroff about the healing fractures. It was not until after the trial court asked the pediatrician to explain

the importance of the various stages of healing that appellant briefly questioned her about it. The pediatrician then testified that some of the rib fractures were at least seven to ten days old, possibly older, and that "rib fractures happened to [the victim] on more than one occasion, because we saw them in different states of healing * * * when x-rays were taken." Dr. Makoroff acknowledged she was neither a radiologist nor an orthopedic doctor but stated, "that is as precise as I can get it, and an orthopedic surgeon and a radiologist couldn't get it anymore precise than that. That is sort of the knowledge that we all share about rib fractures and we all feel equally confident in * * * giving those date parameters."

{¶ 29} Once again, appellant neither objected to the pediatrician's opinion based upon her lack of qualifications nor moved to have her testimony stricken. Moreover, in contrast to defense counsel's cross-examination of Dr. Makoroff regarding brain elasticity and whether the victim's brain could rewire itself despite the loss of brain tissue, his cross-examination of the pediatrician regarding the healing fractures cannot be characterized as challenging her opinion in any respect. Neither defense counsel in his sentencing closing argument nor appellant during allocution disputed Dr. Makoroff's opinion or suggested that appellant was not responsible for all of the victim's rib fractures.

{¶ 30} Appellant further argues that because the conduct was uncharged, he had no opportunity to defend against the alleged conduct. However, although appellant may not have agreed on the record that he had previously abused the victim, he never affirmatively disputed prior physical abuse. Given Dr. Makoroff's presentencing report indicating that the victim had 28 rib fractures and a fracture of her left ankle upon arriving at the hospital, the subsequent diagnosis of physical abuse, and the lack of personal or family history that would suggest that the victim fractured more easily, appellant should have been aware of this issue and could have affirmatively disputed it during allocution or otherwise. In any event, the circumstances of the healing fractures as described by Dr. Makoroff in

conjunction with what appellant admitted doing by pleading guilty to child endangering support the trial court's consideration of whether appellant had previously physically abused his infant daughter.

{¶ 31} Furthermore, in defense of his actions, appellant indicated in his sentencing memorandum, during the presentence investigation, and at sentencing that he simply snapped when he was unable to comfort and console the crying victim and that this was a one-time incident that would never happen again. The trial court could, therefore, consider uncharged conduct in response to the defense claim, and properly did so. *Wright*, 2018-Ohio-965 at ¶ 22. Finally, the victim's various healing fractures were not the sole basis for appellant's sentence nor the most important factor relied upon by the trial court in imposing a maximum sentence. Rather, the trial court primarily relied upon the severe injuries inflicted by appellant upon his defenseless three-month-old daughter in imposing the maximum sentence.

{¶ 32} Appellant's second assignment of error is overruled.

{¶ 33} Assignment of Error No. 3:

{¶ 34} THE SENTENCE IMPOSED ON THE DEFENDANT IS CONTRARY TO LAW WHERE THE SENTENCE IS NOT CONSISTENT WITH SENTENCES IMPOSED FOR SIMILAR CRIMES COMMITTED BY SIMILAR OFFENDERS.

{¶ 35} Appellant argues that his prison sentence is contrary to law because the trial court improperly relied upon seriousness factors that do not exist, namely, appellant's education and profession as a chiropractor and his standing in the community. Appellant asserts that although the list of seriousness factors in R.C. 2929.12(B) is not exhaustive, "any additional factors classifying the offender as more serious must fit into the defined class." In other words, appellant asserts that the trial court can only consider seriousness

factors that are either expressly listed in R.C. 2929.12(B) or are of a similar character.[1] Appellant asserts that because his profession and standing in the community are neither specifically listed as factors in R.C. 2929.12(B) nor of a similar character, the trial court improperly relied upon them in sentencing him.

{¶ 36} The trial court's statement regarding appellant's profession was not in terms of any of the enumerated R.C. 2929.12(B) seriousness factors but a practical observation that a person with an education and profession as a chiropractor should know the dangers involved in violently shaking an infant and recognize the signs of serious injury. Appellant not only failed to obtain medical treatment for the victim for two days, he also effectively dissuaded his wife from doing so. The trial court's statement regarding appellant's standing in the community was likewise not in terms of the enumerated factors in R.C. 2929.12(B) but a practical observation that traditionally, a professional has great standing in the community. Appellant's standing in the community was certainly suggested by defense counsel's portrayal of appellant as an upstanding leader and mentor to people in the community.

{¶ 37} Furthermore, R.C. 2929.12(A) expressly provides that the trial court "has discretion to determine the most effective way to comply with the purposes and principles of sentencing." "In exercising that discretion," the trial court must consider the seriousness factors in R.C. 2929.12 "and, in addition, may consider any other factors that are relevant

---

1. In support of his argument, appellant cites the doctrine of *ejusdem generis*. The Ohio Supreme Court has described the operation of this doctrine as follows:

> Under the rule of *ejusdem generis,* where in a statute terms are first used which are confined to a particular class of objects having well-known and definite features and characteristics, and then afterwards a term having perhaps a broader signification is conjoined, such latter term is, as indicative of legislative intent, to be considered as embracing only things of a similar character as those comprehended by the preceding limited and confined terms.

*State v. Hooper*, 57 Ohio St.2d 87, 89-90 (1979); *State v. Aspell*, 10 Ohio St.2d 1 (1967).

to achieving those purposes and principles of sentencing." *Id.* Likewise, R.C. 2929.12(B) expressly provides that the trial court must consider all applicable seriousness factors as well as "any other relevant factors" as indicating that the offender's conduct is more serious than conduct normally constituting the offense. Contrary to appellant's assertion, the statute neither requires nor suggests that the "other relevant factors" be of a similar character to the enumerated R.C. 2929.12(B) seriousness factors and we decline to apply the doctrine of ejusdem generis.

{¶ 38} Appellant disagrees with the trial court's analysis and its balancing of the seriousness factors in R.C. 2929.12 and mitigation evidence. However, R.C. 2929.12 plainly allows a trial court to consider any factors it considers relevant in imposing a sentence. *State v. Steger*, 12th Dist. Butler No. CA2016-03-059, 2016-Ohio-7908, ¶ 18. The trial court, in imposing a sentence, determines the weight afforded to any particular statutory factors, mitigating grounds, or other relevant circumstances. *State v. Stubbs*, 10th Dist. Franklin No. 13AP-810, 2014-Ohio-3696, ¶ 16. Upon reviewing the record, we find there is no clear and convincing evidence the trial court erred in balancing the factors in R.C. 2929.12 and the mitigation evidence, and in considering appellant's profession as a chiropractor and his standing in the community.

{¶ 39} Appellant further argues that his eight-year prison sentence is not consistent with sentences imposed for similar offenses by similar offenders.

{¶ 40} Pursuant to R.C. 2929.11(B), felony sentences shall be "consistent with sentences imposed for similar crimes committed by similar offenders." However, consistency in sentencing does not mean uniformity. *State v. Graham*, 12th Dist. Warren No. CA2013-07-066, 2014-Ohio-1891, ¶ 14. "A consistent sentence is not derived from a case-by-case comparison, but from the trial court's proper application of the statutory sentencing guidelines." *State v. Micomonaco*, 12th Dist. Butler No. CA2011-07-139, 2012-

Ohio-5239, ¶ 49. "Consistency accepts divergence within a range of sentences and takes into consideration the trial court's discretion to weigh statutory factors." *State v. Hyland*, 12th Dist. Butler No. CA2005-05-103, 2006-Ohio-339, ¶ 29. Therefore, in order for an offender to successfully claim inconsistent sentencing, the offender "must demonstrate that the trial court failed to properly consider the statutory sentencing factors and guidelines found in R.C. 2929.11 and 2929.12." *State v. Geldrich*, 12th Dist. Warren No. CA2015-11-103, 2016-Ohio-3400, ¶ 16.

{¶ 41} In support of his argument, appellant cites *State v. Laracuente*, 8th Dist. Cuyahoga Nos. 76025 and 76047, 2000 Ohio App. LEXIS 2235 (May 25, 2000), a "shaken baby syndrome" case in which a father was sentenced to community control following his conviction for child endangering. However, a defendant cannot simply present other cases in which an individual convicted of the same offense received a lesser sentence to demonstrate that his sentence is inconsistent. *State v. B.J.T.*, 12th Dist. Warren No. CA2018-01-010, 2018-Ohio-4720, ¶ 36; *State v. Silknitter*, 3d Dist. Union No. 14-16-07, 2017-Ohio-327, ¶ 19. Rather, the defendant must show that the trial court failed to properly consider the statutory sentencing factors and guidelines in R.C. 2929.11 and 2929.12. *Geldrich* at ¶ 16.

{¶ 42} The record reflects that the trial court properly considered all relevant sentencing factors under R.C. 2929.12 as well as the purposes and principles of R.C. 2929.11, weighed them, and applied them accordingly. Consequently, appellant has failed to establish that his sentence is inconsistent with the sentence imposed for child endangerment in *Laracuente* or other cases.

{¶ 43} Appellant's third assignment of error is overruled.

{¶ 44} Assignment of Error No. 4:

{¶ 45} THE SENTENCE IS CLEARLY AND CONVINCINGLY NOT SUPPORTED

BY THE RECORD AS A WHOLE.

{¶ 46} While conceding that he seriously injured the victim and that his parental relationship with the victim "technically" facilitated the offense, appellant argues that "the record clearly and convincingly does not support a finding that the maximum sentence was required to avoid demeaning the seriousness of the offense" because he does not present a threat of recidivism.

{¶ 47} While appellant has no prior significant criminal history and presents a low risk of recidivism, that fact does not eliminate or lessen in any way the violence of his actions, the victim's resulting severe injuries, or the life-long physical and developmental impact on the victim.  As stated above, the victim suffered severe physical harm and permanent injury to a part of her brain, the harm was exacerbated by the victim's very young age, and appellant's relationship with the victim facilitated the offense.  As the victim's father, appellant was responsible for her health, welfare, and safety.  Instead, he violently shook her because he could not stand her crying.  By doing so, he abused the trust of his position as a father and used the very young age of his victim to his benefit.

{¶ 48} The record shows that despite the obvious severe injuries suffered by the victim as a result of his behavior, appellant did not seek medical assistance for the victim and effectively dissuaded his wife from doing so for two days.  The PSI indicates that appellant's actions during those two days were purely motivated by his fear anyone would find out what he had done.  As appellant explained during the PSI interview, he intentionally "prioritized [his] own selfish fears over [the victim's] well being."

{¶ 49} This pattern continued once the child was admitted to the hospital.  The PSI indicates that appellant first told the police that the victim's injuries were likely caused when he fell backwards on a staircase while he was carrying the victim.  Appellant then squarely blamed the victim's injuries on his older daughter who was then a toddler.  The PSI and the

- 14 -

record further indicate that throughout the proceedings, appellant consistently blamed his behavior on the victim for continuously "crying and screaming" and for not being as calm and easy of an infant as his older daughter was. While appellant also blamed his behavior on additional stressors, the foregoing plainly indicates that he failed to fully accept responsibility for and recognize the wrongfulness of his actions notwithstanding his expression of remorse.

{¶ 50} We therefore find that the record supports the trial court's determination that imposing a maximum sentence is commensurate with the seriousness of appellant's conduct, necessary to

{¶ 51} punish appellant, and necessary to protect the public. Appellant's fourth assignment of error is overruled.

{¶ 52} In conclusion, we find that appellant's maximum eight-year prison sentence is not clearly and convincingly contrary to law because the trial court properly considered the principles and purposes of sentencing in R.C. 2929.11, as well as the factors listed in R.C. 2929.12, imposed the required mandatory three-year postrelease control term, and sentenced appellant within the permissible statutory range for a second-degree felony in accordance with R.C. 2929.14(A)(2)(b). Furthermore, appellant's sentence is supported by the record.

{¶ 53} Judgment affirmed.

HENDRICKSON, P.J., and PIPER, J., concur.