[Cite as *State v. Nye*, 2026-Ohio-2429.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CHAMPAIGN COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | C.A. No. 2025-CA-25 |
| Appellee | : | |
| | : | Trial Court Case No. 2021 CR 179 |
| v. | : | |
| | : | (Criminal Appeal from Common Pleas |
| JUSTIN DOUGLAS NYE | : | Court) |
| | : | |
| Appellant | : | **FINAL JUDGMENT ENTRY &** |
| | : | **OPINION** |

. . . . . . . . . . .

Pursuant to the opinion of this court rendered on June 26, 2026, the judgment of the trial court is affirmed.

Costs to be paid as stated in App.R. 24.

Pursuant to Ohio App.R. 30(A), the clerk of the court of appeals shall immediately serve notice of this judgment upon all parties and make a note in the docket of the service. Additionally, pursuant to App.R. 27, the clerk of the court of appeals shall send a certified copy of this judgment, which constitutes a mandate, to the clerk of the trial court and note the service on the appellate docket.

For the court,

*Christopher B. Epley*

_____
CHRISTOPHER B. EPLEY, JUDGE

TUCKER, J., and HANSEMAN, J., concur.

**OPINION**
CHAMPAIGN C.A. No. 2025-CA-25

JENNIFER E. MARIETTA, Attorney for Appellant
JANE A. NAPIER, Attorney for Appellee

EPLEY, J.

{¶ 1} Justin Nye appeals his conviction in the Champaign County Common Pleas Court on one count of failure to verify his address, a felony of the fourth degree, and one count of escape, a felony of the fifth degree, following his plea of guilty. Nye received a prison sentence based on the court's review of his pre-sentence investigation report ("PSI"), and he contends that his sentence is contrary to law. Nye further asserts that the court improperly considered an uncharged allegation when making findings in support of the prison sentence. For the following reasons, the trial court's judgment is affirmed.

**I. Facts and Procedural History**

{¶ 2} On June 11, 2018, Nye pled guilty to one count of gross sexual imposition and two counts of attempted gross sexual imposition. Nye had been charged with these offenses following a police investigation into a report by his 13-year-old relative that Nye had molested her. Nye was sentenced to an eighteen-month prison term for the gross sexual imposition charge and to twelve months for each of the attempted gross sexual imposition charges. The court ordered the sentences be served concurrently for a total term of eighteen months. Additionally, Nye was designated a tier I sex offender and required to register annually for fifteen years. Nye was ordered to serve a five-year period of post-release control ("PRC") upon his release from prison.

{¶ 3} Nye was released from prison in January 2020, and his period of PRC began on January 10, 2020. On March 25, 2020, Nye received approval of his request to move

2

from the Volunteers of America Dayton Residential Reentry Program to a residence on W. Light Street in Urbana to live with his half-brother, Garrel Estep. State Parole Officer Brandon Deskins spoke to Estep, who confirmed that he would allow Nye to live with him. Officer Deskins also required Nye to call him every Friday until further notice because of COVID protocols.

{¶ 4} In May 2020, Nye stopped calling to check in, and Officer Deskins attempted to contact him by phone on June 9, 2020. Officer Deskins was unable to reach Nye by phone, so he went to his listed address at Estep's residence on August 4, 2020. Nye was not there. Estep told Officer Deskins that Nye was no longer staying there, but he would come by every few weeks for a day or two. Estep believed that Nye was staying with a cousin in the Kiser Lake area of Champaign County. Officer Deskins notified the Champaign County Sheriff's Office that he did not believe that Nye was residing at his registered address. On August 25, 2020, the Adult Parole Authority declared Nye to be a parole violator at large, and a warrant was issued for his arrest.

{¶ 5} On March 21, 2021, Officer Deskins received a tip that Nye might be living at a residence in Conover, Ohio. Officer Deskins went to the residence, but no one was home. Officer Deskins left a card for Nye to report the next day at 10:00 a.m., but Nye failed to do so.

{¶ 6} Notably, on July 9, 2021, the Urbana Division of Police received a tip identifying Nye as the suspect in a recent bank robbery. Officer Deskins and a detective went to both the address in Conover, Ohio, as well as the residence on W. Light Street, but they were unable to locate Nye. They spoke to Estep again at the W. Light Street address, and he said that Nye was living with friends in Springfield on Mound Street. However, when the officers went to that location, Nye was not there.

3

{¶ 7} On June 29, 2021, at the same time Officer Deskins was attempting to locate Nye, Deputy Rick Brumfield of the Champaign County Sheriff's Office was working on "case follow-ups in the Sexual Offender Database" when he noticed that Nye was past due for his annual registration. Deputy Brumfield issued a warning letter to Nye at the W. Light Street address and went to the residence. There was no answer at that address. Deputy Brumfield issued another warning letter to Nye on July 13, 2021, which was also sent to W. Light Street residence. That letter was returned, indicating "insufficient address, unable to forward."

{¶ 8} On July 22, 2021, Deputy Brumfield and another officer returned to Nye's purported residence on W. Light Street to contact him or anyone who might know of his whereabouts, and they spoke with Estep. Estep told the officers that Nye had listed that apartment as his residence when he was released from prison, but he had only been there for a few weeks after his release. Estep further stated that he last heard that Nye was in Springfield.

{¶ 9} Ultimately, Nye was apprehended on July 5, 2025, while living in a camper behind his cousin's residence in Conover, Ohio. Nye was subsequently indicted on one count each of failure to provide notice of change of address, failure to provide verification of current address, and escape. A jury trial was scheduled for October 14, 2025, but it was vacated because Nye reached a plea agreement with the State.

{¶ 10} During the plea hearing on August 18, 2025, Nye's defense counsel set forth the terms of the proposed plea agreement. Nye agreed to plead guilty to one count of failing to provide verification of current address, a fourth-degree felony, and escape, a fifth-degree felony. The remaining count for failure to provide notice of change of address would be dismissed, the PSI would be waived, and the State would stay silent as to whether the

remaining 1,573 days of Nye's PRC term would be imposed as a prison sentence, as provided by R.C. 2929.141(A)(1).

{¶ 11} After hearing the terms of the proposed plea agreement, the trial court advised Nye that it will generally waive a PSI for "simple and direct" fourth- and fifth-degree felony charges. However, when there is a significant term of PRC attached to a fourth- or fifth-degree felony charge, as was the case here, the trial court "will order a PSI because the Court will want to know whether . . . there are factors in somebody's background that will cause the Court to want to impose . . . a significant penalty." Nye said that he understood and proceeded to enter his pleas, which the trial court accepted. The trial court ordered a PSI and scheduled Nye's sentencing hearing for September 16, 2025.

{¶ 12} During the sentencing hearing, the State expressed concern regarding Nye's "long history where he has demonstrated the inability to abide by conditions of the [c]ourt." According to the State, Nye had "been given numerous opportunities on community control through both the Municipal Court and Felony Court. He was placed on community control. He . . . continued to engage in behavior that . . . [was] inconsistent with the rules of community control and engag[ed] in criminal activity or violat[ed] the rules of community control." The State requested that the trial court impose a prison sentence rather than another term of community control for Nye. Conversely, Nye's counsel requested that the trial court impose a term of community control instead of a prison sentence. Nye's counsel acknowledged Nye's extensive criminal record but opined that his conduct could possibly be attributed to anxiety. Nye read a letter to the court, in which he expressed his remorse for failing to comply with the terms of his prior sentence and assured the court that he would make better choices if granted another chance at community control.

5

{¶ 13} The trial court sentenced Nye to a prison term of 18 months for failure to verify his address and 12 months for escape to be served concurrently. The trial court added a 1,095-day prison term for Nye's PRC violation, which it ordered to run consecutive to Nye's 18-month sentence. The trial court based the prison sentences on its lack of confidence that Nye would comply with the rules of PRC. Regarding the prison term for the violation of PRC, the trial court advised Nye that although it could have imposed up to 1,544 days, it did not impose the maximum term because Nye was not convicted of any new offenses between his release from prison in 2020 and his apprehension on July 5, 2025. The trial court noted that although Nye had admitted in the PSI to using methamphetamine during that time, the court did not believe that Nye should be penalized for "admitting his rehabilitative needs in a PSI under these circumstances."

{¶ 14} Nye now appeals his convictions. He raises two assignments of error, which we address together.

## II. Review of Nye's Sentence

{¶ 15} In his first assignment of error, Nye asserts that his sentence is contrary to law because it is solely punitive. He further argues that the trial court failed to consider the purposes and principles of sentencing set forth in R.C. 2929.11. In Nye's second assignment of error, he contends that the trial court improperly considered an uncharged robbery allegation from 2021 when determining that he should receive a prison sentence.

{¶ 16} A trial court has full discretion to impose any sentence within the authorized statutory range, and it is not required to make any findings or give its reasons for imposing such a sentence up to the maximum term. *State v. Hanson*, 2026-Ohio-53, ¶ 6 (2d Dist.). "However, a trial court must consider the statutory criteria that apply to every felony offense, including those set out in R.C. 2929.11 and R.C. 2929.12." *Id.*

6

{¶ 17} Trial courts must be guided by the overriding purposes of felony sentencing set forth in R.C. 2929.11. "Those purposes are threefold: 'to protect the public from future crime by the offender and others, to punish the offender, and to promote the effective rehabilitation of the offender using the minimum sanctions that the court determines accomplish those purposes without imposing an unnecessary burden on state or local government resources.'" *State v. King*, 2024-Ohio-5347, ¶ 13 (2d Dist.), quoting R.C. 2929.11(A). "'[A] sentencing court may place such weight on each of the purposes as the circumstances of the case require.'" *Id.*, quoting *State v. Bittner*, 2019-Ohio-3834, ¶ 18 (12th Dist.)*.*

{¶ 18} "When reviewing felony sentences, we must apply the standard of review set forth in R.C. 2953.08(G)(2)." *State v. Pigg*, 2026-Ohio-375, ¶ 17 (2d Dist.), citing *State v. Marcum*, 2016-Ohio-1002, ¶ 7. "Under this statute, an appellate court may increase, reduce, or modify a sentence, or it may vacate the sentence and remand for resentencing, only if it clearly and convincingly finds either: (1) the record does not support the sentencing court's findings under certain enumerated statutes, or (2) the sentence is otherwise contrary to law." *Id.* at ¶ 17, citing *Marcum* at ¶ 9, citing R.C. 2953.08(G)(2). However, "[n]othing in R.C. 2953.08(G)(2) permits an appellate court to independently weigh the evidence in the record and substitute its judgment for that of the trial court concerning the sentence that best reflects compliance with R.C. 2929.11 and 2929.12." *State v. Jones*, 2020-Ohio-6729, ¶ 42. "In particular, R.C. 2953.08(G)(2) does not permit an appellate court to conduct a freestanding inquiry like the independent sentence evaluation this court must conduct under R.C. 2929.05(A) when reviewing a death-penalty sentence." *Id.*

{¶ 19} Here, the record demonstrates that before Nye even entered his plea, the trial court had concerns regarding Nye's ability to comply with its orders. The court acknowledged

the parties' agreement to waive the PSI but ordered one so it could "see what has been going on in [Nye's] life for the last five years."

{¶ 20} During the September 16, 2025 sentencing hearing, following the trial court's receipt and review of the PSI, the court expressed concern about Nye's conduct during his five-year evasion of law enforcement after his 2020 release from prison. Specifically, the court observed that although Nye had not been charged with any new offenses, it noted a statement in the PSI that Nye had been a suspect in a 2021 robbery, after he absconded.

{¶ 21} The trial court spoke at length about the evolution of PRC enforcement and the issues surrounding lack of supervision of individuals on PRC. It advised Nye that though he was not charged with any new offenses while his whereabouts were unknown, he still had failed to comply with the conditions of his PRC. The court further advised Nye that it had reviewed the PSI, statements from counsel and Nye, and the purposes and principles of sentencing set forth in R.C. 2929.11 and the seriousness and recidivism factors in R.C. 2929.12.

{¶ 22} Despite the trial court's statement that it had considered the purposes and principles of sentencing in R.C. 2929.11 and the sentencing factors in R.C. 2929.12, Nye takes issue with the trial court's statement during the sentencing hearing that punishment becomes the sole outcome of sentencing in cases under these circumstances. We disagree with Nye's contention that these statements establish that his sentence is contrary to law. The trial court did not say that its *purpose* for sentencing Nye to prison was purely punitive. Rather, the trial court expressed its frustration with Nye and defendants in similar cases who appear to follow the law while on PRC and meet other requirements but simply fail to register their address and keep in touch with their probation officer. The trial court tried to impress upon Nye that, in such cases, the *outcome* of sentencing after a PRC violation is mostly

8

punitive because the additional factors are not at issue, and that the failure to maintain contact with his probation officer can still result in an enhanced sentence. To the extent that Nye argues that his sentence is unsupported by the record, the invitation to reweigh the record and substitute the trial court's judgment is precluded by *Jones*.

{¶ 23} With respect to the trial court's consideration of Nye's alleged involvement in the uncharged 2021 robbery case, the trial court acknowledged multiple times during the sentencing hearing that he had not been charged with that crime or any other offenses during the five years leading up to his arrest. Notwithstanding, the PSI included Nye's identification as a suspect in another crime that occurred after he absconded, and it was appropriate for the trial court to consider the contents of the PSI when determining Nye's sentence. Notably, the trial court listed the factors it considered—including Nye's lengthy criminal record, admitted drug use, and the length of time he absconded—in determining that he should be sentenced to a term of imprisonment. In declining to impose the maximum sentence for the PRC violation, the trial court specifically noted that Nye had not been convicted of any additional crimes during the time his whereabouts were unknown. Therefore, to the extent the trial court considered the 2021 uncharged robbery allegation involving Nye, it did not contribute to the court's determination that Nye should receive a prison sentence.

{¶ 24} The trial court gave appropriate consideration to the purposes and principles of sentencing in R.C. 2929.11 and the seriousness and recidivism factors in R.C. 2929.12. Further, the trial court did not base the decision to impose a prison sentence on an uncharged allegation. Nye's sentence is not contrary to law. Accordingly, his assignments of error are overruled.

9

### III. Conclusion

**{¶ 25}** The trial court's judgment affirmed.

. . . . . . . . . . . . .

TUCKER, J., and HANSEMAN, J., concur.