[Cite as *State v. Kyles*, 2024-Ohio-998.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

STATE OF OHIO,                           :

    Appellee,                        :         CASE NO. CA2023-07-083

    - vs -                           :         O P I N I O N
                                               3/18/2024
                                         :

CAMERON S. KYLES,                        :

    Appellant.                       :


CRIMINAL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
Case No. CR 2019 10 1671; CR 2019 06 0862


Michael T. Gmoser, Butler County Prosecuting Attorney, and Willa Concannon, Assistant Prosecuting Attorney, for appellee.

Yavitch & Palmer Co., L.P.A., and Stephen E. Palmer, for appellant.


**S. POWELL, P.J.**

{¶ 1} Appellant, Cameron S. Kyles, appeals the decision of the Butler County Court of Common Pleas summarily denying his petition for postconviction relief without a hearing following his convictions for a multitude of serious felony offenses that included, among others, participating in a criminal gang and aggravated murder. For the reasons

outlined below, we affirm the trial court's decision.

**Facts and Procedural History**

{¶ 2} On June 26, 2019, the Butler County Grand Jury returned a single-count indictment charging Kyles with one count of participating in a criminal gang. This indictment was prosecuted under Case No. CR2019-06-0862. Several months later, on October 18, 2019, the Butler County Grand Jury returned an additional eleven-count indictment charging Kyles with two counts each of aggravated murder, murder, aggravated robbery, aggravated burglary, and felonious assault, all of which were accompanied by firearm and gang specifications, and one count of having weapons while under disability. This indictment was prosecuted under Case No. CR2019-10-1671. The two cases were later consolidated and, after Kyles was found competent to stand trial and his motion to suppress the statements he made to police was denied, proceeded to a five-day jury trial that began on August 23, 2021.

{¶ 3} On August 27, 2021, the jury returned guilty verdicts on all counts and specifications set forth within both Case Nos. CR2019-06-0862 and CR2019-10-1671. On October 19, 2021, the trial court held a sentencing hearing where it sentenced Kyles to serve an aggregate, indefinite term of life imprisonment with the possibility of parole after 50 to 53 years, less 733 days of jail-time credit.[1] Kyles directly appealed his conviction to this court and this court affirmed Kyles' conviction in all respects on February 21, 2023. *State v. Kyles*, 12th Dist. Butler Nos. CA2021-11-141 and CA2021-11-142, 2023-Ohio-489. Kyles then appealed this court's decision to the Ohio Supreme Court, which declined review on June 20, 2023. *State v. Kyles*, 170 Ohio St.3d 1450, 2023-

---

1. There is some confusion in the record as it relates to Kyles' sentence being either 46 to 48 years in prison or 50 to 53 years in prison. However, setting aside that confusion, there is no dispute that Kyles will first become eligible for parole on September 10, 2068.

Ohio-1979.

{¶ 4} In denying Kyles' appeal, this court overruled Kyles' argument alleging the trial court erred by denying his motion to suppress the statements he made to police. More specifically, this court found no merit to Kyles' argument that his *Miranda* rights waiver provided to the detective who interviewed him, Detective Stephen Winters, was not knowingly, intelligently, and voluntarily made. *Kyles*, 2023-Ohio-489 at ¶ 29-32. This court also overruled Kyles' argument that his statements to police should have been suppressed because Detective Winters improperly continued questioning him after he asserted his Fifth Amendment right to counsel during Detective Winter's first interview with him. *Id.* at ¶ 34-36. This court further rejected Kyles' claim that he received ineffective assistance of counsel upon finding that, even if we were to assume his trial counsel's performance was deficient, Kyles could not show any resulting prejudice therefrom. *Id.* at ¶ 90. This is in addition to this court noting on three separate occasions that there was "overwhelming evidence" to establish Kyles' guilt of all counts and specifications for which he was tried and convicted. *Id.* at ¶ 43, 51, and 58.

{¶ 5} On February 6, 2023, prior to this court issuing our decision affirming Kyles' conviction on direct appeal, Kyles filed a petition for postconviction relief. Kyles filed his petition in accordance with R.C. 2953.21(A)(1)(a)(i). Pursuant to that statute, any person who has been convicted of a criminal offense, and who claims that there was such a denial or infringement of the person's rights as to render the judgment "void or voidable" under the Ohio Constitution or the United States Constitution, "may file a petition in the court that imposed sentence, stating the grounds for relief relied upon, and asking the court to vacate or set aside the judgment or sentence or to grant other appropriate relief[.]" To support his petition, Kyles argued that his trial counsel provided him with ineffective assistance, thereby depriving him of a fair trial in violation of his "Right to Counsel and

- 3 -

Due Process of Law" as guaranteed to him by the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and "comparable provisions" of the Ohio Constitution.

{¶ 6} Within his petition, Kyles stated three grounds for relief, all three of which were based on his trial counsel's alleged ineffective assistance. Those three stated grounds for relief were as follows:[2]

(1) ineffective assistance of counsel based upon his trial counsel's purported "failure to conduct and/or request [a] second competency evaluation" to determine whether he had the intellectual capacity to stand trial;

(2) ineffective assistance of counsel based upon his trial counsel's supposed failure to consider his "significant mental defect" and "obtain a psychological assessment" prior to the hearing on his motion to suppress to determine whether he had the intellectual capacity to make a knowing, intelligent, and voluntary waiver of his *Miranda* rights; and

(3) ineffective assistance of counsel based upon his trial counsel's failure to argue, as part of his motion to suppress, that his Sixth Amendment right to counsel had been violated.

{¶ 7} To support his first and second stated grounds for relief, Kyles attached to his postconviction relief petition an affidavit and psychological evaluation report from Dr. John L. Tilley, a clinical and forensic psychologist based out of Columbus, Ohio. Within those two documents, Dr. Tilley opined that Kyles has a significant "intellectual disability" that "likely impaired" his ability to provide a knowing and intelligent waiver of his *Miranda* rights. Dr. Tilley noted that this included Kyles' low IQ score of 57 and limited reading comprehension, which Dr. Tilley equated to that of a kindergartener. Dr. Tilley also opined that, had he been consulted prior to Kyles' trial to conduct a "second opinion" on Kyles' competency to stand trial, he "likely would have opined" that Kyles was not competent to

---

2. We have renumbered the three stated grounds raised by Kyles within his petition for postconviction relief for organizational and readability purposes.

- 4 -

stand trial, and generated a report "highlighting the extent of Mr. Kyles' intellectual disability, his very low functioning in multiple areas relevant to his adjudicative competence, and the impairments in his capacities to understand the nature and objective of the proceedings and assist in his defense."  This is in addition to Dr. Tilley stating that, "[w]hile it is recognized that his competence to stand trial was assessed twice in 2019," and that "the Court adjudicated him competent to stand trial in accordance with both evaluations," it was nevertheless his opinion that "an analysis of the data and resulted from the present evaluation suggest that, the rulings from the Court notwithstanding, Mr. Kyles' competence to stand trial may have been impaired," thereby providing "likely opportunities—and perhaps even cause—for requesting second opinions in both matters."

{¶ 8}  To support his third stated ground for relief, Kyles attached to his postconviction relief petition the municipal court docket statement and related records that ultimately resulted in the Butler County Grand Jury issuing the 11-count indictment against him in Case No. CR2019-10-1671.  Based upon those documents, Kyles argued that by Detective Winters interviewing him after he had been appointed counsel, "the police violated his Sixth Amendment Right to Counsel," a violation "independent of the validity of his *Miranda* waiver" as set forth in his second stated ground for relief.  To support this argument, Kyles set forth the following timeline setting forth the various interviews Detective Winters had with him on October 13 and 14, 2019:

October 13, 2019, 11:06 a.m. – First interview (Winters)

October 13, 2019, 12:35 p.m. – Email from Dep. Smith to Winters

October 14, 2019, 8:30 a.m. – Kyles in Middletown Municipal Court **with Counsel**

October 14, 2019, 9:30 a.m. – Second Interview (Winters)

October 14, 2019 9:30 a.m. – Second Interview (Winters and Hughs)

{¶ 9} Based upon this "critical" timeline, Kyles argued that, even assuming his request to speak with Detective Winters after his first interview with Detective Winters was knowingly and intelligently made, which Kyles claimed it was not in accordance with Dr. Tilley's report, "the instigation of formal adversary proceedings triggered the Sixth Amendment in addition to the Fifth Amendment *Miranda* concerns. The police were thus not permitted to question Kyles without his attorney present." Therefore, according to Kyles, his trial counsel was ineffective for failing "to raise this Sixth Amendment tissue during the suppression hearing," something which Kyles argued within his petition was "objectively unreasonable, as standard norms of practice mandate trial counsel raise and litigate viable constitutional suppression issues."

{¶ 10} On March 2, 2023, the state filed a motion to dismiss Kyles' petition for postconviction relief based upon the doctrines of res judicata and the law of the case. The state additionally argued that, even if res judicata and the law of the case doctrines did not apply, Kyles' petition could be denied on the merits because it failed to set forth sufficient operative facts to establish grounds for relief. A few months later, on June 20, 2023, the trial court issued a decision granting the state's motion to dismiss, thereby summarily denying Kyles' petition for postconviction relief without a hearing. In so doing, the trial court initially noted that Kyles had "argued many of the same issues" in support of his postconviction relief petition that he had raised with this court as part of his direct appeal.

{¶ 11} Given the similarity between Kyles' claims, the trial court determined that, in as much as Kyles was seeking to relitigate those same issues, particularly as it related to the question of whether Kyles had made a knowing, intelligent, and voluntary waiver of

his *Miranda* rights, the doctrine of res judicata "would apply to bar granting a post-conviction petition." In reaching this decision, the trial court noted that "Kyles not only could have, but did, argue the same questions before the appellate court, a body that rejected each and every contention regarding his competency and the questions of due process." The trial court also noted that, given that this court had already ruled on many of the same issues that Kyles had raised as grounds for relief within his postconviction relief petition, the law of the case doctrine forbade it from "refus[ing] to abide" by this court's decision as it related to those same issues. In so holding, the trial court determined that:

> Nothing presented in the latest filings overcomes the definitive ruling by the 12th District that Kyles knowingly, intelligently and voluntarily waived his *Miranda* rights. Likewise, nothing in the filings overcomes the requirements of *Strickland v. Washington* (1984), 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, as held by the appellate court.

{¶ 12} The trial court did not stop there, however. Rather, "out [of] an overabundance of caution," the trial court also reviewed Kyles' petition on the merits and determined that Kyles had "fail[ed] to establish substantive grounds on any of his claims for relief in his petition and therefore a hearing is not needed." In so doing, the trial court determined that Kyles' claims that his trial counsel had "failed to fully investigate his alleged mental deficiency, failed to employ an expert witness, and failed to allow the expert to testify at his suppression hearing on the issue of understanding his [*Miranda*] rights," were all "contrary to the record." In reaching this decision, the trial court initially stated with respect to Kyles' ineffective assistance of counsel claims:

> The defendant relies solely upon a review and report of John L. Tilley, (Tilley), a psychologist retained by the defense, who posits Kyles' intellectual ability precludes him from understanding the ramifications of his decision and competency to stand trial.

According to the record, Tilley conducted no face-to-face, or other interviews of Kyles, forming his opinions solely on the basis of the psychological reports contained in the record.[3] Tilley, an explicitly selected defense expert, opines the defendant, "may have been impaired" and was "likely impaired" because of his poor reading skills. These conclusory claims summarily and conveniently dismiss the findings of two other experts that Kyles was a savvy 18-year-old. Even if Kyles was, as Tilley claims, weak in the ways of the academic world, the defendant was shrewd enough to recognize his precarious predicament and open negotiations with the enemy in an effort to improve his indefensible fortress of culpability.

{¶ 13} Continuing, the trial court then stated:

Kyles's petition for post-conviction relief further fails as to the claimed ineffective assistance as he does not delineate, beyond mere speculation and conclusory statements, how counsel's performance at trial fell below a reasonable standard or prejudiced him at trial. In fact, the claims are diametrically opposite of reality as evidenced by the recorded proceedings where the defense mounted a vigorous assault of dysfunctional deviance upon the prosecution. Defense counsel's efforts penetrated the prosecution's labors so effectively that The State requested, and received, a specific jury instruction on the question of diminished capacity that reads:

A contention of diminished capacity means that although the accused was not insane, due to emotional distress, physical condition or other factors he could not fully comprehend the nature of the criminal act he is accused of committing. Diminished capacity is not a recognized defense in Ohio. You should disregard any evidence presented during trial used to support a claim of diminished capacity. You may only consider evidence of mental capacity if it is demonstrated that it is being used for some purpose other than asserting the defense of diminished capacity.

{¶ 14} The trial court additionally stated that, in this case, Kyles' trial counsel "specifically addressed questions of 'diminished capacity' throughout the trial, fought for,

---

3. We note that the record does not support this finding. The record instead indicates that Dr. Tilley conducted two in-person interviews with Kyles, the first on August 22, 2022 while Kyles was imprisoned at the Lebanon Correctional Institution in Warren County, Ohio for approximately two hours, with the second interview taking place on January 19, 2023 at the Ross Correctional Institution in Chillicothe, Ohio for an additional 90 minutes.

and received, two independent 'in-person evaluations' by trained experts, and made the tactical decision not pursue live testimony as, from a purely speculative point of view, it may have done more harm to his client's defense than good." Turning then to Kyles' last remaining ineffective assistance of counsel claim, the trial court stated:

> The defense argues that once Kyles invoked his Fifth Amendment right in Middletown Municipal Court, the police were forever barred from speaking with the defendant without counsel. This argument is specious at best.
>
> The Supreme Court of the United States held in *Montejo v. Louisiana*, 556 U.S. 778, 129 [S].Ct. 2079 (2009) that, as is the case here, a defendant can waive both his Fifth and Sixth Amendments rights even after invocation. Specifically, since Kyles initiated the subsequent request to speak with the police, he forfeited both upon being apprised of his rights pursuant to *Miranda*.

{¶ 15} The trial court thereafter concluded by finding Kyles' petition for postconviction relief did nothing more than "construct[] a house of straw" and, in light of the overwhelming evidence of Kyles' guilt, "the whirlwind of law and reason require that [Kyles] reap the wages of justice." The trial court noted that this evidence included, even when taking Kyles' statements to police out of consideration, "evidence from his GPS tracker, other witnesses and the victim's blood on the money recovered from him," all of which the trial court found "would be sufficient for a reasonable jury to convict."

**Kyles' Appeal and Two Assignments of Error for Review**

{¶ 16} On July 19, 2023, Kyles filed a timely notice of appeal from the trial court's decision. Following briefing by both parties, oral argument was held before this court on February 12, 2024. Kyles' appeal now properly before this court for decision, Kyles has raised two assignments of error for review. Those two assignments of error being:

*Assignment of Error No. 1:*

{¶ 17} THE TRIAL COURT ABUSED ITS DISCRETION, APPLIED INCORRECT

LEGAL STANDARDS, AND ERRONEOUSLY DENIED KYLES' PETITION FOR POST-CONVICTION RELIEF WITHOUT CONDUCTING A HEARING IN VIOLATION OF R.C. 2953.21(D) AND DUE PROCESS OF LAW AS GUARANTEED BY THE FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND COMPARABLE PROVISIONS OF THE OHIO CONSTITUTION.

*Assignment of Error No. 2:*

{¶ 18} THE TRIAL COURT ERRORED BY DENYING KYLES' PETITION FOR POST-CONVICTION RELIEF ON THE MERITS WITHOUT A HEARING, THEREBY DEPRIVING HIM OF HIS RIGHT TO DUE PROCESS OF LAW AND HIS RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF THE FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND COMPARABLE PROVISIONS OF THE OHIO CONSTITUTION.

{¶ 19} In both of his assignments of error, Kyles argues the trial court erred by summarily denying his petition for postconviction relief without holding a hearing; the first assignment of error challenges the trial court's application of the doctrines of res judicata and law of the case and the second assignment of error challenges the trial court's decision, albeit in the alternative, and "out [of] an overabundance of caution," to deny his postconviction relief petition on the merits. To support his arguments, Kyles has raised four issues for this court's consideration. After setting forth the appropriate standard of review, we will address each of those four issues in turn.

*Petition for Postconviction Relief Standard of Review*

{¶ 20} "In Ohio, persons convicted of criminal offenses may petition a trial court for postconviction relief if they fit into one of four categories." *State v. Miller*, Slip Opinion No. 2023-Ohio-3448, ¶ 19 (Kennedy, C.J., concurring in the judgment). Those four categories are set forth in R.C. 2953.21(A)(1)(a)(i) through (iv). Relevant here is the first category,

- 10 -

which "permits a person convicted of a criminal offense to petition the trial court to vacate his conviction when he believes 'there was such a denial or infringement of [his] rights as to render the judgment void or voidable under the Ohio Constitution or the Constitution of the United States.'" *State v. Johnson*, Slip Opinion No. 2024-Ohio-134, ¶ 1, quoting R.C. 2953.21(A)(1)(a)(i). When a criminal defendant challenges his conviction through a postconviction relief petition, the trial court may hold an evidentiary hearing on the issues raised by the petition. *State v. Harding*, 12th Dist. Madison No. CA2019-05-012, 2020-Ohio-1067, ¶ 4, citing R.C. 2953.21(D) thru (F). "An evidentiary hearing is not automatically guaranteed each time a defendant makes a petition for postconviction relief," however. *State v. Vore*, 12th Dist. Warren Nos. CA2012-06-049 and CA2012-10-106, 2013-Ohio-1490, ¶ 11. Rather, "[t]he trial court, before granting a hearing on a petition filed under R.C. 2953.21(A)(1)(a)(i), is required to 'determine whether there are substantive grounds for relief.'" *Miller*, quoting R.C. 2953.21(D). "A petition presents substantive grounds for relief when it contains allegations that are sufficient to state a constitutional claim and the files and records of the case do not affirmatively disprove the claim." *State v. Blanton*, 171 Ohio St.3d 19, 2022-Ohio-3985, ¶ 24, citing *State v. Milanovich*, 42 Ohio St.2d 46, 50 (1975); and R.C. 2953.21(F).

{¶ 21} "In determining whether the petition states a substantive ground for relief, the trial court must consider the entirety of the record from the trial proceedings as well as any evidence filed by the parties in postconviction proceedings." *State v. Bunch*, 171 Ohio St.3d 775, 2022-Ohio-4723, ¶ 24, citing R.C. 2953.21(D). "If the record on its face demonstrates that the petitioner is not entitled to relief, then the trial court must dismiss the petition." *Id.*, citing R.C. 2953.21(D) and (E). That is to say, "'[a] trial court properly denies a defendant's petition for postconviction relief without holding an evidentiary hearing where the petition, the supporting affidavits, the documentary evidence, the files,

- 11 -

and the records do not demonstrate that petitioner set forth sufficient operative facts to establish substantive grounds for relief.'" *State v. Barron*, 12th Dist. Warren No. CA2022-09-059, 2023-Ohio-1249, ¶ 10, quoting *State v. Calhoun*, 86 Ohio St.3d 279 (1999), paragraph two of the syllabus. However, "[i]f the record does not on its face disprove the petitioner's claim, then the court is required to 'proceed to a prompt hearing on the issues.'" *Bunch*, quoting R.C. 2953.21(F); *see also State v. Hatton*, 169 Ohio St.3d 446, 2022-Ohio-3991, ¶ 28 ("[t]he defendant is entitled to an evidentiary hearing when the allegations in the motion demonstrate substantive grounds for relief").

{¶ 22} "A trial court's decision to summarily deny a postconviction petition without holding an evidentiary hearing will not be reversed absent an abuse of discretion." *State v. Harding*, 12th Dist. Madison No. CA2019-05-012, 2020-Ohio-1067, ¶ 6. "The standard is deferential, requiring the trial court to engage in more than mere error in law or judgment." *State v. Jones*, 12th Dist. Butler No. CA2022-04-036, 2022-Ohio-3864, ¶ 9. To that end, for this court to find an abuse of discretion, "we must find that the trial court's ruling was unreasonable, arbitrary, or unconscionable." *State v. Payton*, 12th Dist. Fayette No. CA2022-01-001, 2022-Ohio-2829, ¶ 7. "A decision is unreasonable where a sound reasoning process does not support it." *State v. Miller*, 12th Dist. Butler No. CA2016-01-007, 2016-Ohio-7360, ¶ 7. "[A]n 'arbitrary' decision is one made 'without consideration of or regard for facts [or] circumstances.'" *State v. Beasley*, 152 Ohio St.3d 470, 2018-Ohio-16, ¶ 12, quoting Black's Law Dictionary 125 (10th Ed.2014). "An unconscionable decision may be defined as one that affronts the sense of justice, decency, or reasonableness." *State v. Wane*, 12th Dist. Butler Nos. CA2020-01-010, CA2020-01-011, CA2020-01-014, and CA2020-01-015, 2020-Ohio-4874, ¶ 22.

*Kyles' First Issue and Analysis: The Misapplication of the Doctrine of Res Judicata*

{¶ 23} In his first issue presented for review, Kyles argues the trial court erred by

misapplying the doctrine of res judicata when overruling his petition for postconviction relief without a hearing. This is because, according to Kyles, the trial court "incorrectly concluded" that res judicata applied given his postconviction relief petition argued the same ineffective assistance of counsel claim that this court had already overruled when denying his direct appeal. That claim being Kyles' argument that his trial counsel provided him with ineffective assistance by failing to consult with Dr. Tilley, or some other expert who would have provided him with substantially similar findings to that of Dr. Tilley, as it relates to whether he had the intellectual capacity to stand trial and to make a knowing, intelligent, and voluntary waiver of his *Miranda* rights. We agree the trial court did so err. However, as explained more fully below, any such error the trial court made by misapplying the doctrine of res judicata to the case at bar was harmless.

{¶ 24} "It is well established that a trial court may dismiss a postconviction relief petition on the basis of the doctrine of res judicata." *State v. Davis*, 12th Dist. Butler No. CA2012-12-258, 2013-Ohio-3878, ¶ 30. "The doctrine of res judicata precludes a convicted defendant 'from raising and litigating in any proceeding, except an appeal from that judgment, any defense or any claimed lack of due process that was raised or could have been raised' at trial or on direct appeal." *Hatton*, 2022-Ohio-3991 at ¶ 22, quoting *State v. Szefcyk*, 77 Ohio St.3d 93 (1996), syllabus. "So a court reviewing a postconviction-relief petition generally may not decide a claim that could have been presented at trial and raised on direct appeal." *Blanton*, 2022-Ohio-3985 at ¶ 2, citing *State v. Perry*, 10 Ohio St.2d 175, 180 (1967). There's a twist, however, when it comes to petitions for postconviction relief that are based on the alleged ineffective assistance of counsel. *Id.*

{¶ 25} In those cases, "res judicata does not bar claims for postconviction relief, inter alia, when a petitioner 'must rely on evidence outside the trial record to establish his

- 13 -

claim for relief.'" *State v. Johnson*, 12th Dist. Warren No. CA2022-09-063, 2023-Ohio-879, ¶ 20, quoting *Blanton*, citing *State v. Cole*, 2 Ohio St.3d 112, 113-114 (1982). Therefore, a petitioner who presents a claim of ineffective assistance of counsel, and who demonstrates through evidence outside the trial record that their claim either was not, or could not have been, fairly adjudicated in a direct appeal, that petitioner is provided "a *second* opportunity to litigate the claim." (Emphasis sic.) *Blanton* at ¶ 38. Accordingly, where a defendant petitioning for postconviction relief has brought forth evidence outside the record of ineffective assistance of counsel, that showing is sufficient to, at the very least, "'avoid dismissal on the basis of res judicata.'" *Id.* at ¶ 31, quoting *Cole* at 114.

{¶ 26} In this case, Kyles brought forth evidence outside the record of ineffective assistance of counsel to avoid the entirety of his petition for postconviction relief being dismissed on the basis of res judicata. That being Dr. Tilley's affidavit and psychological evaluation indicating Kyles lacked the intellectual capacity to both stand trial and to make a knowing, intelligent, and voluntary waiver of his *Miranda* rights. Therefore, given the principles set forth above, we must necessarily agree with Kyles' argument that the trial court erred by misapplying the doctrine of res judicata to the case at bar to dismiss the entirety of Kyles' petition for postconviction relief. The error, however, was harmless.

{¶ 27} "'[A]n error is harmless where there is no reasonable possibility that it contributed to an accused's conviction, such as where there is overwhelming evidence of the accused's guilt or some other indicia that the error did not contribute to the conviction.'" *State v. Liming*, 12th Dist. Clinton No. CA2022-01-001, 2023-Ohio-2817, ¶ 33, quoting *State v. Cox*, 12th Dist. Butler No. CA2003-05-113, 2004-Ohio-4977, ¶ 32. Such is the case here. This is because, contrary to Kyles' claim, "merely providing evidence outside the record is not sufficient to entitle a petitioner to a hearing." *Johnson*, 2023-Ohio-879 at ¶ 21. That is to say, "simply overcoming the res judicata bar through the introduction

of evidence outside the record is not sufficient," in and of itself, to necessitate the trial court holding a hearing on the matter. *Blanton*, 2022-Ohio-3985 at ¶ 31.

{¶ 28} Rather, to be entitled to a hearing, "a petitioner 'must proffer evidence which, if believed, would establish not only that his trial counsel had substantially violated at least one of a defense attorney's essential duties to his client but also that said violation was prejudicial to the [petitioner].'" (Brackets sic.) *Id.*, quoting *Cole*, 2 Ohio St.3d at 114. "If the record on its face demonstrates that the petitioner is not entitled to relief, then the trial court must dismiss the petition." *State v. Bunch*, 171 Ohio St.3d 775, 2022-Ohio-4723, ¶ 24, citing R.C. 2953.21(D) and (E). "If the record does not on its face disprove the petitioner's claim, then the court is required to 'proceed to a prompt hearing on the issues.'" *Id.*, quoting R.C. 2953.21(F). Thus, in cases where the defendant has brought forth evidence outside the record of ineffective assistance of counsel to avoid dismissal on the basis of res judicata, such as the case here, a two-part inquiry applies to determine whether the defendant is entitled to a hearing on the matter. *Barron*, 2023-Ohio-1249 at ¶ 17. That two-part inquiry provides the following: (1) "Has the petitioner introduced competent evidence of ineffective assistance that was not included in the trial record?" and (2) "if so, does that evidence present substantive grounds for relief; that is, if believed, would the newly presented evidence—together with any evidence in the trial record—establish that counsel was ineffective?" *Blanton* at ¶ 33. It is this second prong where Kyles' claim fails.

{¶ 29} To support this portion of his ineffective assistance of counsel claim, Kyles relies on the affidavit and psychological evaluation report provided by Dr. Tilley. However, after a thorough review of the record, we find the opinions offered by Dr. Tilley within his affidavit and psychological evaluation report, together with the evidence contained within the trial court record, do not present substantive grounds that would entitle Kyles to relief.

That is to say, even when considering the entirety of the record from the trial court proceedings, in conjunction with Dr. Tilley's affidavit and psychological evaluation report attached to Kyles' petition for postconviction relief, Kyles cannot establish that his trial counsel provided him with ineffective assistance either by (1) failing "to conduct and/or request [a] second competency evaluation" to determine whether he had the intellectual capacity to stand trial; or by (2) failing to consider his "significant mental defect" and "obtain a psychological assessment" prior to the hearing on his motion to suppress to determine whether he had the intellectual capacity to make a knowing, intelligent, and voluntary waiver of his *Miranda* rights as alleged. Therefore, for these reasons, and for the reasons set forth more fully below, Kyles' first argument lacks merit.

{¶ 30} "The standard by which we review claims of ineffective assistance of counsel is well established." *State v. Carter*, 72 Ohio St.3d 545, 557 (1995). To establish ineffective assistance, a defendant must show (1) that counsel's performance was deficient, and (2) that counsel's deficient performance prejudiced the defendant. *Strickland v. Washington*, 466 U.S. 668, 687-688, 694, 104 S.Ct. 2052 (1984). Courts determine deficient performance by asking whether counsel's conduct "fell below an objective standard of reasonableness." *Id*. at 688. When making this determination, the reasonableness of counsel's conduct must be judged based on "the facts of the particular case, viewed as of the time of counsel's conduct." *Id*. at 690. Only when counsel's errors were "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment" has counsel engaged in deficient performance. *Id*. at 687. To establish prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. This requires the errors to be so significant as to "undermine confidence in the outcome." *Id*. "A defendant's failure to make a sufficient

showing of either prong of the *Strickland* inquiry is fatal to his claim of ineffective assistance." *State v. Lloyd*, 171 Ohio St.3d 353, 2022-Ohio-4259, ¶ 31, citing *id.* at 697.

{¶ 31} Here, Kyles argues that his trial counsel's failure to consult with Dr. Tilley, or some other expert who would have provided him with substantially similar findings to that of Dr. Tilley, constituted deficient performance under the first prong of the *Strickland* inquiry. However, although Kyles' petition for postconviction relief did not need to "definitively establish" either his trial counsel counsel's deficiency or whether he was prejudiced by it to warrant the trial court holding a hearing on the matter, *Bunch*, 2022-Ohio-4723 at ¶ 27, the failure of Kyles' trial counsel to seek out what would have amounted to a *third* competency evaluation, not a second like Kyles suggests, does not fall anywhere near what this court would consider deficient performance when viewed against an objective standard of reasonableness.

{¶ 32} We instead agree with the trial court's finding that, "as to the claimed ineffective assistance," Kyles "does not delineate, beyond mere speculation and conclusory statements, how counsel's performance at trial fell below a reasonable standard or prejudiced him at trial." This includes Kyles' claim that, if his trial counsel had provided the trial court with a psychological evaluation report like that of Dr. Tilley's, he never would have been deemed competent to stand trial, thus causing a delay in the proceedings "unless and until [his] competency was restored" in accordance with R.C. 2945.37(G).[4] "Such speculation is insufficient to establish ineffective assistance." *State v. Perez*, 124 Ohio St.3d 122, 2009-Ohio-6179, ¶ 217; *see, e.g., State v. Worley*, 164

---

4. Pursuant to R.C. 2945.37(G), a defendant is incompetent to stand trial if he or she "is incapable of understanding the nature and objective of the proceedings against the defendant or of assisting in the defendant's defense * * *." If, after a hearing, the trial court finds the defendant incompetent to stand trial, the trial court "shall enter an order authorized by section 2945.38 of the Revised Code." "R.C. 2945.38 governs the disposition of a defendant after an initial determination that the defendant is not competent to stand trial and sets forth the procedures for treatment and evaluation orders." *State v. Thompson*, 12th Dist. Butler No. CA2020-11-115, 2021-Ohio-2632, ¶ 11.

Ohio St.3d 589, 2021-Ohio-2207, ¶ 108 (counsel did not provide appellant with ineffective assistance of counsel where appellant's ineffective assistance of counsel claim was based on "counsel's failure to act," thereby limiting appellant to mere speculation and conjecture as to counsel's alleged deficiency). Kyles' claim otherwise lacks merit.

{¶ 33} We also agree with the trial court's finding that Kyles' ineffective assistance of counsel claims were "diametrically opposite of reality as evidenced by the recorded proceedings where the defense mounted a vigorous assault of dysfunctional deviance upon the prosecution." The record indicates that these efforts were so effective that, as the trial court stated within its decision, they "penetrated the prosecution's labors so effectively" that it necessitated the state requesting, and thereafter receiving, "a specific jury instruction on the question of diminished capacity." This is in addition to the trial court's finding Kyles' trial counsel had "specifically addressed questions of 'diminished capacity' throughout the trial, fought for, and received, two independent 'in-person evaluations' by trained experts, and made the tactical decision not to pursue live testimony as, from a purely speculative point of view, it may have done more harm to his client's defense than good." Given the record in this case, we agree with the trial court's findings.

{¶ 34} Regardless, even if we were to assume Kyles' petition was sufficient on its face to raise an issue as to whether Kyles' trial counsel was deficient for failing to seek out that third competency evaluation, which it was not, Kyles' petition is wholly lacking as it relates to how that failure subjected him to any resulting prejudice as required by the second prong of the *Strickland* inquiry. This is because, even if Kyles' trial counsel had obtained a report like that provided to him by Dr. Tilley, that would have done nothing more than created a battle of the experts on the issue of whether Kyles had the intellectual capacity to stand trial and to make a knowing, intelligent, and voluntary waiver of his

*Miranda* rights. That Kyles' trial counsel chose not to wage that war after having already received two other competency evaluations indicating Kyles was competent to stand trial was clearly a strategic decision, one that this court finds is not even all that debatable given the facts of this case.

{¶ 35} This is significant when considering "even debatable strategic and trial tactics do not constitute ineffective assistance of counsel." *State v. Cox*, 12th Dist. Butler No. CA2005-12-513, 2006-Ohio-6075, ¶ 29. This holds true "even if, in hindsight, it looks as if a better strategy had been available." *State v. Artis*, 3d Dist. Logan No. 8-18-40, 2019-Ohio-2070, ¶ 39, citing *State v. Cook*, 65 Ohio St.3d 516, 524 (1992). This is a well-established principle given that this court must "strongly presume that defense counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment," *State v. Akladyous*, 12th Dist. Butler No. CA2021-12-164, 2023-Ohio-3105, ¶ 61, for it is "all too tempting" to "second-guess counsel's assistance after conviction or adverse sentence * * *." *Strickland*, 466 U.S. at 689. Therefore, for these reasons, Kyles' second argument also lacks merit.

{¶ 36} What is more, and what simply cannot be ignored, is the fact that the state presented overwhelming evidence of Kyles' guilt on all counts and specifications for which he was tried and convicted, a determination that this court made on three separate occasions in our decision denying Kyles' direct appeal. *See Kyles*, 2023-Ohio-489 at ¶ 43, 51, and 58. This evidence included, as noted by the trial court, "evidence from his GPS tracker, other witnesses and the victim's blood on the money recovered from him," all of which "would be sufficient for a reasonable jury to convict." The trial court found this to be the case even when taking Kyles' confession out of the equation. We agree. Therefore, given the overwhelming evidence of Kyles' guilt presented at trial, any alleged deficiency in his trial counsel's performance for failing to seek out that third competency

evaluation simply cannot be found prejudicial under the second prong of the *Strickland* inquiry set forth above. *See, e.g., State v. Tench*, 156 Ohio St.3d 85, 2018-Ohio-5205, ¶ 273 ("given the overwhelming evidence of guilt in this case, counsel's alleged [deficient performance] cannot be found prejudicial under *Strickland*").

{¶ 37} In so holding, we note that contrary to what Kyles' would like this court to believe, Kyles was not convicted because of any alleged ineffective assistance provided to him by his trial counsel. Kyles was instead convicted based upon the overwhelming evidence establishing his guilt beyond a reasonable doubt. *See, e.g., State v. Clarke*, 12th Dist. Butler No. CA2015-11-189, 2016-Ohio-7187, ¶ 62 (denying appellant's ineffective assistance of counsel claim where the record plainly indicated "trial counsel did fully investigate this case and zealously represent [appellant]," thereby leading to this court to find appellant "was not convicted based on ineffective assistance of counsel, but instead [appellant's] conviction was based on the overwhelming evidence presented at trial"). Accordingly, Kyles' third argument likewise lacks merit.

{¶ 38} For the reasons outlined above, and although we agree with Kyles' argument that the trial court erred by misapplying the doctrine of res judicata to the case at bar, such error was harmless. Being harmless error, this court need not reverse and remand with respect to Kyles' claims alleging his trial counsel was ineffective for (1) failing "to conduct and/or request [a] second competency evaluation" to determine whether he had the intellectual capacity to stand trial; or (2) failing to consider his "significant mental defect" and "obtain a psychological assessment" prior to the hearing on his motion to suppress to determine whether he had the intellectual capacity to make a knowing, intelligent, and voluntary waiver of his *Miranda* rights. This is because, when applying the necessary two-part inquiry set forth above, the opinions offered by Dr. Tilley within his affidavit and psychological evaluation report, together with the evidence contained within

the trial court record, do not present substantive grounds that would entitle Kyles to relief. Therefore, because the record on its face demonstrates that Kyles is not entitled to relief, the trial court did not abuse its discretion by denying Kyles' postconviction relief petition without a hearing. Accordingly, finding no error in the trial court's decision, Kyles' first issue lacks merit.

*Kyles' Second Issue and Analysis: The Law of the Case Doctrine*

{¶ 39} In his second issue presented for review, like that of his first, Kyles argues the trial court erred by misapplying the law of the case doctrine when overruling his petition for postconviction relief without a hearing. However, given the resolution of Kyles' first issue set forth above, this issue has now been rendered moot. Pursuant to App.R. 12(A)(1)(c), "[u]nless an assignment of error is made moot by a ruling on another assignment of error," a court of appeals shall "decide each assignment of error and give reasons in writing for its decision." "[A]n assignment of error is moot when an appellant presents issues that are no longer live as a result of some other decision rendered by the appellate court." *State v. Gideon*, 165 Ohio St.3d 156, 2020-Ohio-6961, ¶ 26. Therefore, although presented as an issue for review rather than as a full-fledged assignment of error, Kyles' second issue is nevertheless moot in accordance with App.R. 12(A)(1)(c) and need not be addressed by this court.

*Kyles' Third Issue and Analysis: The "But For" Standard of Prejudice*

{¶ 40} In his third issue presented for review, Kyles argues the trial court erred by "expressly relying on an erroneously high 'but for' standard for prejudice" as it relates to the second prong—the prejudice prong—of the *Strickland* ineffective assistance of counsel inquiry. To support this claim, Kyles directs this court's attention to *Bunch*, 2022-Ohio-4723 at ¶ 26, wherein the Ohio Supreme Court stated that, "[r]egarding the prejudice prong, the defendant must prove that there is a 'reasonable probability' that counsel's

deficiency affected the outcome of the defendant's proceedings."  Therefore, according to Kyles, "the test for 'prejudice' is not the 'but for' causation test applied by the trial court," it is instead the "reasonable probability" test set forth by the Ohio Supreme Court in *Bunch* that applies.  What Kyles seems to overlook, however, is that the Ohio Supreme Court in *Bunch* cited directly to *Strickland*, 466 U.S. at 694, for this proposition of law, a page in which the United States Supreme Court specifically held that, to establish prejudice in an ineffective assistance of counsel claim:

> The defendant must show that there is a reasonable probability that, *but for counsel's unprofessional errors*, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome.

(Emphasis added.)

{¶ 41} That the Ohio Supreme Court in *Bunch* paraphrased the United States Supreme Court's decision in *Strickland* rather than providing a direct, and more complete quote of the United Supreme Court's holding in that case, does not mean the standard in Ohio for establishing prejudice in an ineffective assistance of counsel claim was changed in *Bunch*.  Had that been the case, the Ohio Supreme Court certainly would have made that clear given the sheer amount of times *Strickland* has been cited to for that proposition of law in Ohio.[5]  This includes over 70 times by the Ohio Supreme Court alone.  That is to say nothing of the fact that, according to this court's research, every Ohio appellate court has continued to use the "but for" standard of prejudice when reviewing ineffective assistance of counsel claims after the Ohio Supreme Court's decision in *Bunch* was released.  This includes over ten times by this court, the most recent being just over two

---

5. At the time of this writing, that portion of *Strickland* had been cited by Ohio appellate courts nearly 3,000 times, with countless other decisions applying the same "but for" standard of prejudice without citing directly to *Strickland*.  *See, e.g., State v. Pack*, 12th Dist. Clermont Nos. CA2022-12-087 thru CA2022-12-089, 2023-Ohio-3200, ¶ 14.

months prior to this case being submitted to this court for decision. *See State v. Coleman*, 12th Dist. Butler No. CA2023-03-037, 2023-Ohio-4354, ¶ 16. Accordingly, finding no merit to Kyles' claim raised herein, Kyles' third issue lacks merit.

*Kyles' Fourth Issue and Analysis: The Sixth Amendment Right to Counsel*

{¶ 42} In his fourth issue presented for review, Kyles argues the trial court erred by summarily denying his postconviction relief petition without a hearing on his claim that he received ineffective assistance of counsel based upon his trial counsel's failure to argue, as part of his motion to suppress, that his Sixth Amendment right to counsel had been violated. However, after a thorough review of the record, we agree with the trial court's decision finding Kyles' argument that, once he invoked his Fifth Amendment right to counsel, the police were forever barred from speaking with the defendant without counsel, "specious at best." This is because, as the trial court properly determined, "a defendant can waive both his Fifth and Sixth Amendments rights even after invocation" pursuant to the United States Supreme Court's decision in *Montejo v. Louisiana*, 556 U.S. 778, 129 S.Ct. 2079 (2009), which held "the Sixth Amendment right to counsel may be waived by a defendant, so long as relinquishment of the right is voluntary, knowing, and intelligent." *Id.* at 786.

{¶ 43} Contrary to Kyles' claim, "[n]othing in the Sixth Amendment prevents a suspect charged with a crime and represented by counsel from voluntarily choosing, on his own, to speak with police in the absence of an attorney." *Michigan v. Harvey*, 494 U.S. 344, 352, 110 S.Ct. 1176 (1990). Therefore, "[a]lthough a defendant may sometimes later regret his decision to speak with police, the Sixth Amendment does not disable a criminal defendant from exercising his free will." *Id*. at 353. That is exactly what Kyles did here, thus negating any claim that Kyles received ineffective assistance based upon his trial counsel's failure to argue, as part of his motion to suppress, that his Sixth

Amendment right to counsel had been violated. Had Kyles' trial counsel chosen to raise such an issue with the trial court, such a claim would have surely been denied outright as having no basis in law or in fact, thus rendering any such argument futile. "Trial counsel is not ineffective for failing to make a futile argument." *State v. Trafton*, 12th Dist. Warren No. CA2022-06-040, 2023-Ohio-122, ¶ 29. Accordingly, finding no merit to Kyles' claim raised herein, Kyles' fourth issue lacks merit.

## Conclusion

{¶ 44} For the reasons outlined above, and finding no merit to any of the four issues raised by Kyles' herein, Kyles' two assignments of error challenging the trial court's decision summarily denying his petition for postconviction relief without a hearing lack merit and are overruled. Therefore, having now overruled the two assignments of error advanced by Kyles in support of his appeal, Kyles' appeal from the trial court's decision summarily denying his postconviction relief petition without a hearing is denied.

{¶ 45} Judgment affirmed.

PIPER and M. POWELL, JJ., concur.