[Cite as *State v. Brown*, 2025-Ohio-500.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2024-03-019 |
| - vs - | : | O P I N I O N<br>2/18/2025 |
| | : | |
| BRYAN J. BROWN, | : | |
| Appellant. | : | |

CRIMINAL APPEAL FROM CLERMONT COUNTY MUNICIPAL COURT
Case No. 2023 CRB 4087A; 2023 CRB 4087B

Mark J. Tekulve, Clermont County Prosecuting Attorney, and Nicholas A. Horton, Assistant Prosecuting Attorney, for appellee.

Garrett Law Offices, and Dawn S. Garrett, for appellant.

**M. POWELL, J.**

{¶ 1} Appellant, Bryan Brown, appeals his conviction in the Clermont County Municipal Court for violating a protection order and resisting arrest. For the reasons detailed below, we affirm the judgment of the trial court.

**Factual Background**

{¶ 2}   On December 20, 2023, Sergeant Cody Collier and Officer Kyle Houk with the Goshen Township Police Department were dispatched to 7162 Goshen Road on a disorderly conduct complaint.   When they arrived, the officers spoke to the home's resident, Carol Mason, who advised that she was having problems with Brown, her 41-year-old grandson who lived in the basement.   According to Mason, Brown was acting erratically and needed mental health care.   She explained that he was simply "tearing the place up."

{¶ 3}   Mason informed the officers that she obtained a protection order against Brown earlier in the day and wanted him to leave.   Sergeant Collier confirmed that the protection order had issued, but believed it needed to be served upon Brown to force his removal.   Accordingly, he reached out to the Clermont County Sheriff's Department to arrange for a deputy to perfect service of the order.

{¶ 4}   During this time, Sergeant Collier waited in and around the residence with Mason while Brown could be heard screaming and yelling in the basement.   A short while later, Brown came up from the basement in an aggressive and highly agitated manner.   However, he quickly retreated when he saw the officers standing in the living room.   Brown went back down the basement steps and shouted profanities at Sergeant Collier.   Brown told Sergeant Collier that he needed to "get the fuck out of here" and threatened to knock him out.   Sergeant Collier informed Brown that there was a protection order against him and that he was soon going to be served with the papers requiring him to immediately vacate the premises.

{¶ 5}   About 40 minutes after Sergeant Collier first responded to the home, Deputy Jason Daniels arrived to serve the protection order on Brown.   Sergeant Collier and Deputy Daniels went down to the basement where Deputy Daniels read the protection

- 2 -

order to Brown and then provided him a copy. Sergeant Collier informed Brown that he had to leave but would allow him a few minutes to gather his belongings. Sergeant Collier warned, however, that if Brown refused, he would be placed under arrest.

{¶ 6} Despite repeated warnings, Brown refused to leave. Ultimately, Sergeant Collier advised Brown that he was under arrest. Brown refused to cooperate, and a brief physical struggle ensued. Sergeant Collier, Officer Houk, and Deputy Daniels were eventually able to subdue Brown and place him under arrest. In the process, Brown knocked Officer Houk's glasses off his face, breaking them.

### Legal Proceedings

{¶ 7} The next day Sergeant Collier filed two complaints against Brown for violating a protection order in violation of R.C. 2919.27(A)(1), a first-degree misdemeanor, and resisting arrest in violation of R.C. 2921.33(A), a second-degree misdemeanor. Brown pled not guilty and was appointed a public defender.

{¶ 8} On January 11, 2024, Brown's public defender filed a plea of not guilty by reason of insanity and requested a continuance to have a competency evaluation. That same day, the parties appeared for a hearing before the trial court. When Brown heard his public defender confirm that he was seeking a competency evaluation, Brown interjected stating "[h]e's fired. I've already did this. Went through it last year." The trial court then granted the continuance to allow for a competency evaluation, noting that any other matters could be addressed later.

{¶ 9} Brown was assessed by Dr. Davis with the Southern Ohio Forensic Evaluations Services, who prepared a report stating that Brown was competent to stand trial and did not meet the criteria for the not guilty by reason of insanity plea. The parties appeared for another hearing where Brown's public defender stipulated to the contents of the report. The trial court then found Brown competent to stand trial, and the case was

- 3 -

set for a bench trial.

{¶ 10} On March 4, 2024, the parties appeared for a bench trial at which time Brown told the court that he thought "Owen" was going to be his attorney. Brown implied that he was unhappy with his public defender because the public defender advised him that the case "doesn't look good" and that Brown should enter into a plea agreement. The trial court advised Brown that his public defender was his attorney, and the proceedings were going to go forward.

{¶ 11} Sergeant Collier was the only witness called during the bench trial. He testified about the events of December 20, including that he informed Brown about the protection order and the need to vacate the residence. Sergeant Collier also testified that Deputy Daniels served Brown with the protection order, but Brown refused to leave and then resisted arrest. In addition, the state introduced a recording taken from Sergeant Collier's body cam and a copy of the protection order. The recording from the body cam captured the incident, including where Deputy Daniels served the protection order on Brown and read it to him. Following the close of evidence, the trial court found Brown guilty as charged.

{¶ 12} During the sentencing hearing, the state informed the trial court that Brown had prior convictions for assault, failure to comply, disorderly conduct, attempted trafficking in drugs, and aggravated menacing. Brown disputed some of the prosecutor's statements regarding his criminal history. The trial court then conducted its own inquiry into Brown's local criminal history and advised that it would only consider Brown's local convictions for assault, failure to comply, and misuse of the 911 system in rendering its sentencing decision. Thereafter, the trial court sentenced Brown to 30 days in jail for resisting arrest and 120 days in jail for violating the protection order. The terms were ordered to be served consecutively. Brown now appeals, raising four assignments of

error for review. For ease of discussion, we will address Brown's assignments of error out of order.

**Appeal**

{¶ 13} Assignment of Error No. 2:

{¶ 14} THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION WHEN IT FOUND DEFENDANT GUILTY OF THE [sic] VIOLATING A PROTECTION ORDER WHEN THERE WAS NO TESTIMONY BY LAW ENFORCEMENT WHO ALLEGEDLY SERVED THE DEFENDANT WITH THE ORDER.

{¶ 15} Assignment of Error No. 3:

{¶ 16} THE VERDICT WAS BASED UPON INSUFFICIENT EVIDENCE AND/OR WAS CONTRARY TO THE MANIFEST WEIGHT OF THE EVIDENCE AND THE TRIER OF FACT CLEARLY LOST ITS WAY.

{¶ 17} In his second and third assignments of error, Brown argues that his convictions are based upon insufficient evidence and are against the manifest weight of the evidence. Brown's arguments are without merit.

{¶ 18} Whether the evidence presented at trial is legally sufficient to sustain a verdict is a question of law. *State v. Davidson*, 2018-Ohio-1779, ¶ 14 (12th Dist.). When reviewing the sufficiency of the evidence underlying a conviction, an appellate court examines the evidence to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. MacPhereson*, 2024-Ohio-5359, ¶ 13 (12th Dist.). Therefore, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.*

{¶ 19} A manifest weight of the evidence challenge examines the "inclination of

the greater amount of credible evidence, offered at a trial, to support one side of the issue rather than the other." *State v. Barnett*, 2012-Ohio-2372, ¶ 14 (12th Dist.). To determine whether a conviction is against the manifest weight of the evidence, the reviewing court must look at the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed, and a new trial ordered. *State v. Graham*, 2009-Ohio-2814, ¶ 66 (12th Dist.).

{¶ 20} In reviewing the evidence, an appellate court must be mindful that the original trier of fact was in the best position to judge the credibility of witnesses and determine the weight to be given to the evidence. *State v. Mahmoud*, 2024-Ohio-4624, ¶ 13 (12th Dist.). An appellate court will overturn a conviction due to the manifest weight of the evidence only in the exceptional case in which the evidence weighs heavily against the conviction. *State v. Zitney*, 2021-Ohio-466, ¶ 15 (12th Dist.). A determination that a conviction is supported by the manifest weight of the evidence will also be dispositive of the issue of sufficiency. *State v. Reeder*, 2021-Ohio-2988, ¶ 31 (12th Dist.).

*Violation of a Protection Order*

{¶ 21} Brown was convicted of violating a protection order in violation of R.C. 2919.27(A)(1), which provides, in relevant part, that no person shall recklessly violate the terms of a protection order issued pursuant to R.C. 3113.31. "A person acts recklessly when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that the person's conduct is likely to cause a certain result or to be of a certain nature." R.C. 2901.22(C).

{¶ 22} Brown contends that his conviction of violation of a protection order was not supported by sufficient evidence or was against the manifest weight of the evidence

because: (1) Deputy Daniels, the officer who read the protection order to Brown and served it upon him did not appear and testify to those facts; (2) the protection order did not account for Mason's basement, where Brown resided, being a separate portion of the home with a separate entrance; and (3) Sergeant Collier's testimony concerning the service of the protection order and his body cam recording of the incident were inadmissible hearsay which should not have been admitted into evidence.

{¶ 23} A protection order issued pursuant to R.C. 3113.31 mandates notice to the respondent. *State v. Wilson*, 2021-Ohio-1444, ¶ 8 (6th Dist.). Such notice requires either service of the order or constructive notice. *Id.* According to R.C. 2919.27(D),

> In a prosecution for a violation of this section, it is not necessary for the prosecution to prove that the protection order or consent agreement was served on the defendant if the prosecution proves that the defendant was shown the protection order or consent agreement or a copy of either or a judge, magistrate, or law enforcement officer informed the defendant that a protection order or consent agreement had been issued, and proves that the defendant recklessly violated the terms of the order or agreement.

Thus, it is unnecessary for the state to prove that a defendant has been served with the protection order if the state can otherwise prove that a law enforcement officer informed the defendant that the protection order had been issued. *State v. Lay*, 2021-Ohio-892, ¶ 11 (12th Dist.).

{¶ 24} Following review, we find Brown's conviction for violating a protection order is supported by the manifest weight of the evidence. In this case, Sergeant Collier informed Brown of the protection order and advised him, on multiple occasions, that he needed to vacate the residence. This alone is sufficient to satisfy the notice requirement under R.C. 2919.27(D). However, Sergeant Collier also testified that Deputy Daniels served Brown with a copy of the protection order. The recording from Sergeant Collier's body cam captured Deputy Daniels serving Brown with the protection order, reading the

- 7 -

order out loud to him, and providing him with a copy. Sergeant Collier then gave Brown multiple opportunities to pack his belongings and comply with the order, but Brown refused. After several minutes of warnings and consistent refusals, Sergeant Collier informed Brown that he was under arrest. Thus, not only was Brown informed about the protection order by two different law enforcement officers, but the record also shows that Brown was personally served with a copy of the order. Brown's explicit refusal to leave the residence certainly amounted to a reckless violation of the protection order. *See Lay* at ¶ 14.

**{¶ 25}** On appeal, Brown argues the state failed to introduce testimony from Deputy Daniels who served the protection order. He therefore maintains the state failed to meet its burden of proof as to the notice requirement. However, for the reasons listed above, testimony from Deputy Daniels was unnecessary in light of R.C. 2919.27(D).

**{¶ 26}** Furthermore, even if this were not the case, the evidence from Sergeant Collier's body cam clearly shows Deputy Daniels serving Brown with the protection order, reading the order's contents, and providing Brown with a copy. To that point, Brown makes a general assertion that the statements captured on the body cam are impermissible hearsay. In so doing, he presents no analysis of the issue. As to the claim that the statements are hearsay, we note that a statement only constitutes hearsay if it is offered in evidence to prove the truth of the matter asserted. Evid. R. 801(C). Statements, such as those made by Deputy Daniels advising Brown of the protection order, are typically not hearsay because they are not offered to establish the truth of the matter asserted, but rather for the non-hearsay purpose of establishing that Brown had notice of the protection order. *See State v. Osie*, 2014-Ohio-2966, ¶ 118 ("A statement is not hearsay when offered for a purpose other than to prove the truth of the matter asserted."). Nevertheless, we need not elaborate further, as it is not this court's

responsibility to construct Brown's argument for him. App.R. 16(A)(7) requires an appellant's brief to include an argument containing the appellant's contentions with respect to each assignment of error presented for review and "the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies." App.R. 12(A)(2) provides that an appellate court "may disregard an assignment of error presented for review if the party raising it fails to identify in the record the error on which the assignment of error is based or fails to argue the assignment separately in the brief, as required under App.R. 16(A)." *State v. Philpot*, 2024-Ohio-2596, ¶ 32 (12th Dist.).

**{¶ 27}** Finally, Brown makes one last, cursory argument that he did not violate the terms of the protection order "as he understood it." To support this argument, Brown claims that there are "two separate portions" of the residence with "separate entries." Brown therefore argues that he did not enter "the part of the home occupied by [Mason]." However, this argument is without merit, as his characterization of the residence is inaccurate. In this case, Brown was simply in the basement, which is a part of the residence. There is no evidence to support Brown's assertions otherwise. Accordingly, we find Brown's conviction for violating a protection order is supported by the manifest weight of the evidence.

*Resisting Arrest*

**{¶ 28}** Brown was also convicted of resisting arrest in violation of R.C. 2921.33(A). That statute provides, "[n]o person, recklessly or by force, shall resist or interfere with a lawful arrest of the person or another." In determining the lawfulness of an arrest, this "court need not find that the elements of the underlying charge have been proven [beyond a reasonable doubt], but there must exist a reasonable basis for the arrest." *State v. Mitchell*, 2011-Ohio-2465, ¶ 33 (12th Dist.). In other words, an arrest is "lawful" if the

surrounding circumstances would give a reasonable police officer cause to believe that an offense has been or is being committed. *In re A.M.I.*, 2015-Ohio-367, ¶ 36 (12th Dist.).

{¶ 29} We find Brown's conviction for resisting arrest is also supported by the manifest weight of the evidence. As previously addressed, Brown violated the protection order and was told he was under arrest. Sergeant Collier testified that Brown refused his reasonable requests and elected to ignore the officers. After multiple attempts to gain control of the situation, Sergeant Collier determined that he needed to take Brown to the ground to secure him in handcuffs. Sergeant Collier stated that Brown pulled away, tensed up, and refused to comply. During the brief physical altercation, Brown knocked off and damaged Officer Houk's glasses.

{¶ 30} On appeal, Brown again provides only cursory arguments claiming, for example, that he objected to "being manhandled" and arguing that he "did not use force." However, the trial court, as trier of fact, was in the best position to weigh the credibility of the witnesses and the weight to be given the evidence. *State v. Terry*, 2021-Ohio-4043, ¶ 16 (12th Dist.). Convictions are not against the manifest weight of the evidence simply because the trier of facts believed the state's evidence. *State v. Gregory*, 12th Dist. Clermont No. CA2022-10-070, 2023-Ohio-1700, ¶ 18. In this case, the state presented ample evidence showing that Brown resisted arrest, including through the introduction of the body cam evidence, which clearly showed Brown resisting arrest. As a result, we find Brown's conviction for resisting arrest is supported by the manifest weight of the evidence.

*Conclusion*

{¶ 31} In light of the foregoing, we find Brown's convictions are supported by the manifest weight of the evidence and are not based upon insufficient evidence. Brown's second and third assignments of error are overruled.

{¶ 32} Assignment of Error No. 1:

- 10 -

{¶ 33} THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION WHEN IT SENTENCED THE DEFENDANT USING AN UNVERIFIED AND UNSTIPULATED CRIMINAL HISTORY WITHOUT A PRESENTENCE INVESTIGATION AND THEN ORDERED CONSECUTIVE SENTENCES FOR A SERIES OF EVENTS IN A SINGLE OCCURRENCE.

{¶ 34} In his first assignment of error, Brown argues the trial court erred by ordering him to serve consecutive terms of 30 days in jail for resisting arrest and 120 days in jail for violating the protection order.  Brown supports this claim by arguing that the trial court relied upon "unspecified sources" regarding his criminal history.[1]  He further maintains that a consecutive sentence was inappropriate because the offenses were a "continuous series of events" and the sentence was disproportionate and not necessary to protect the public.

{¶ 35} This court reviews a trial court's sentence on a misdemeanor violation under an abuse of discretion standard.  *State v. Jezioro*, 2017-Ohio-2587, ¶ 6 (12th Dist.).  An abuse of discretion connotes more than an error in law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable.  *State v. Sanchez-Garza*, 2017-Ohio-1234, ¶ 33 (12th Dist.).

{¶ 36} Pursuant to R.C. 2929.21 and 2929.22, trial courts have broad discretion when determining what sentence is appropriate for each given misdemeanor case.  *State v. Kinsworthy*, 2014-Ohio-2238, ¶ 30 (12th Dist.).  When determining the appropriate

---

1. While Brown claims the trial court relied on "unspecified sources," we note it would not be uncommon for the trial court to access online court dockets.  Furthermore, this court may take judicial notice of publicly accessible online court dockets.  *State v. Estridge*, 2022-Ohio-208, ¶ 12, fn. 1 (2d Dist.) ("it is a common practice for appellate courts to take judicial notice of publicly accessible online court dockets").  Our review confirms that Brown has been convicted of multiple offenses in the Clermont County Municipal Court, including assault, failure to comply, and misuse of the 911 system.  *State v. Brown*, Clermont M.C. No. 2022CRB03406 (assault); *State v. Brown*, Clermont M.C. No. 2022CRB03393 (failure to comply); *State v. Brown*, Clermont M.C. No. 2022CRB03368 (misuse of the 911 system).

sentence, the trial court must be guided by the purposes of misdemeanor sentencing which are "to protect the public from future crime by the offender and others and to punish the offender." R.C. 2929.21(A). The trial court must also consider the factors listed in R.C. 2929.22(B)(1), including the nature and circumstances of the offense, and may consider any other factors that are relevant to achieving the purposes and principles of misdemeanor sentencing. *State v. Fisher*, 2020-Ohio-3764, ¶ 11 (12th Dist.).

{¶ 37} The trial court is not required to make consecutive sentence findings under R.C. 2929.14(C)(4) prior to ordering consecutive sentences for jail terms imposed for misdemeanor offenses. *State v. Fluhart*, 2021-Ohio-2153, ¶ 25 (12th Dist.). That statute is instead reserved for circumstances where the trial court imposes consecutive sentences for prison terms imposed for felony offenses. *State v. Henson*, 2021-Ohio-38, ¶ 17 (12th Dist.). The trial court need only "specify" that the jail terms being imposed were to be served consecutively. *Id.*

{¶ 38} After a thorough review of the record, we find no error in the trial court's decision to sentence Brown to 30 days in jail for resisting arrest and 120 days in jail for violating a protection order. We also find no error in the trial court's decision ordering those jail terms to be served consecutively. The sentence imposed for each offense falls within the statutory limits for first-and-second-degree misdemeanor offenses. R.C. 2929.24(A)(1) (the maximum jail term a trial court can impose for a first-degree misdemeanor offense is 180 days); R.C. 2929.24(A)(2) (the maximum jail term a trial court can impose for a second-degree misdemeanor offense is 90 days). Furthermore, because there is no affirmative indication that the trial court failed to consider any of the mandatory provisions set forth in either R.C. 2929.21 or 2929.22, the trial court is presumed to have complied with both statutes prior to issuing its sentencing decision. *Jezioro*, 2017-Ohio-2587 at ¶ 7 ("[a] trial court is presumed to have considered the

- 12 -

statutory factors when the sentence is within the statutory limits and there is no affirmative showing that the trial court failed to do so").

{¶ 39} Though Brown claims the trial court should have ordered a presentence-investigative report ("PSI") and erred by relying on "unspecified sources," it is well established that a PSI is not mandatory in a misdemeanor case. *State v. Doty*, 2019-Ohio-917, ¶ 14 (12th Dist.). Moreover, the trial court specifically stated that it was not relying on the state's representation of Brown's criminal history and would instead conduct its own inquiry. Brown does not present any argument that the trial court relied on inaccurate information. Furthermore, it is unclear why Brown believes the continuous nature of the offenses has any bearing on whether the jail terms should be ordered consecutively, as both offenses were clearly separate and distinct that resulted in separate harm. There is no reason that Brown should not be subject to consecutive jail terms merely because the offenses occurred close in time. Accordingly, finding no merit to any of the arguments raised herein, we find Brown's first assignment of error lacks merit and is overruled.

{¶ 40} Assignment of Error No. 4:

{¶ 41} DEFENDANT WAS DENIED HIS CONSTITUTIONAL RIGHTS TO DUE PROCESS, TRIAL BY AN IMPARTIAL JURY, AND EFFECTIVE ASSISTANCE OF COUNSEL.

{¶ 42} In his fourth assignment of error, Brown argues that he received ineffective assistance of counsel.[2] To prevail on an ineffective assistance of counsel claim, appellant must show his trial counsel's performance was deficient, and that he was prejudiced as a

---

2. Brown also makes a separate argument that he was denied his right to a jury trial. However, the record does not support this claim. App.R. 12(A)(2); App.R. 16(A).

result. *State v. Clarke*, 2016-Ohio-7187, ¶ 49 (12th Dist.). Trial counsel's performance will not be deemed deficient unless it fell below an objective standard of reasonableness. *Davidson*, 2018-Ohio-1779 at ¶ 26. To show prejudice, appellant must establish that, but for his trial counsel's errors, there is a reasonable probability that the result of his trial would have been different. *Id.*

{¶ 43} The failure to satisfy either prong of the analysis is fatal to an ineffective assistance of counsel claim. *Clarke* at ¶ 49. Counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *State v. Burns*, 2014-Ohio-4625, ¶ 7 (12th Dist.).

{¶ 44} Brown initially argues that he was forced to proceed to trial with an attorney that he had "fired." This issue arose during the hearing in which Brown's public defender requested a competency evaluation and Brown interjected that "[h]e's fired. I've already did this. Went through it last year." The issue was never squarely raised again. Brown did mention at the bench trial that he thought "Owen" was going to represent him, however, there was no notice of appearance indicating any new representation. Furthermore, given the context, Brown's "he's fired" comment is better understood as a mere fit of pique rather than a sincere attempt to replace his public defender. Additionally, while an indigent defendant has the right to competent counsel, they do not have the right to appointed counsel of their own choosing. *In re C.L.*, 2024-Ohio-616, ¶ 37 (12th Dist.). An indigent defendant seeking a substitute of appointed counsel must demonstrate good cause, which would include circumstances such as a conflict of interest or a complete breakdown in communication. *State v. Wilson*, 2002-Ohio-5506, ¶ 31 (12th Dist.); *State v. Gonzalez*, 6th Dist. Ottawa No. OT-23-027, 2024-Ohio-4515, ¶ 15 (6th Dist.). Brown does not allege that there was a conflict of interest or a complete breakdown in communication. Brown's only comment to the court was that his public defender had

advised him of the weakness of his case. Given the strength of the evidence presented against Brown, this was an appropriate concern. Brown's arguments to the contrary are without merit.

{¶ 45} Brown also argues he received ineffective assistance of counsel because his public defender entered into certain stipulations. Specifically, Brown argues that his public defender should not have stipulated to the admission of his mental health evaluation and should have requested a second opinion. Brown also maintains that his public defender should not have stipulated to the admissibility of the recording from Sergeant Collier's body cam. However, it is well established that decisions regarding what stipulations should be made and what objections should be made primarily involve trial strategy and tactics. *Davidson*, 2018-Ohio-1779 at ¶ 28. Even debatable trial strategies and tactics do not constitute ineffective assistance of counsel. *State v. Wood*, 2020-Ohio-422, ¶ 28 (12th Dist.).

{¶ 46} In this case, Brown did not receive ineffective assistance of counsel on the stipulation regarding his competency evaluation. *State v. Kyles*, 2024-Ohio-998, ¶ 32 (12th Dist.) (counsel was not deficient for not seeking another competency evaluation). Though Brown does appear to have mental health issues and cognitive deficits, the first evaluation found Brown competent and there is no reasonable indication that a second evaluation would have rendered a different result. As we have stated previously, mental illness does not automatically indicate incompetence to stand trial. *State v. Cullen*, 2024-Ohio-1916, ¶ 27 (12th Dist.); *State v. Spurrier*, 2021-Ohio-1061, ¶ 48 (11th Dist.). That Brown's public defender chose not to further contest Brown's competency after receiving the report that Brown was competent to stand trial was a strategic decision that Brown only attacks via speculative arguments. Mere speculation is insufficient to establish ineffective assistance. *Kyles* at ¶ 32-34.

**{¶ 47}** We further find that Brown did not receive ineffective assistance of counsel regarding the admissibility of the body cam evidence. Though Brown contends the recording contains hearsay from Deputy Daniels, he again presents no analysis on the issue. As we stated earlier, statements such as those made by Deputy Daniels advising Brown of the protection order are typically not hearsay because they are not offered to establish the truth of the matter asserted. *See Osie*, 2014-Ohio-2966 at ¶ 118. Moreover, the state overwhelmingly proved that Brown had notice of the protection order. That is, even if Deputy Daniels' words and statements were removed from the recording, there would still be ample evidence to support Brown's convictions. Even if there was no stipulation as to the recording, there is nothing to suggest it would not have been admissible. Sergeant Collier could easily have authenticated the recording with testimony that it fairly and accurately depicts the events he personally witnessed. The decision not to object and stipulate to the admissibility of the body cam evidence was reasonable trial strategy.

**{¶ 48}** Brown next argues that his public defender should have objected to the prosecutor's recitation of his criminal history and again when the trial court relied on "unspecified sources" to determine his criminal history. However, these arguments are also without merit. As an initial matter, we note that Brown cannot prove any resulting prejudice, as the trial court expressly stated that it did not consider the information provided by the state. Instead, the trial court stated that it only considered Brown's criminal history regarding his local crimes in the municipal court, which we have discussed above. As this court has previously explained, courts have historically been permitted to consider a wide range of information in imposing a sentence, including hearsay evidence and evidence of an offender's criminal history. *State v. Bittner*, 2019-Ohio-3834, ¶ 23 (12th Dist.). Accordingly, this claim of ineffective assistance of counsel is also without

- 16 -

merit.

**{¶ 49}** Finally, Brown argues that the doctrine of cumulative error should apply. However, because Brown has not demonstrated any error, let alone multiple or cumulative errors, we find that the doctrine of cumulative error is inapplicable and provides no basis for reversal. *State v. Wilson*, 2019-Ohio-338, ¶ 37 (12th Dist.). Brown's fourth assignment of error is overruled.

**{¶ 50}** Judgment affirmed.

BYRNE, P.J., and PIPER, J., concur.