[Cite as *State v. Craddock*, 2025-Ohio-2041.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2024-09-060 |
| | : | O P I N I O N |
| - vs - | | 6/9/2025 |
| | : | |
| LARISSA CRADDOCK, | : | |
| Appellant. | : | |

CRIMINAL APPEAL FROM MASON MUNICIPAL COURT
Case No. 24CRB00181

Maxwell D. Kinman, for appellee.

Bradley R. Hoyt, for appellant.

**PIPER, J.**

{¶ 1}   Appellant, Larissa Craddock, appeals her conviction in the Mason Municipal Court after the trial court found her guilty of violating a protection order in violation of R.C. 2919.27(A)(2), a first-degree misdemeanor. For the reasons outlined below, we affirm Craddock's conviction.

{¶ 2}   On September 26, 2023, the victim in this case, K.J., received a civil stalking protection order against Craddock.[1] The protection order was issued to Craddock pursuant to R.C. 2903.214. The protection order prohibited Craddock from, among other

---

1. K.J. is the stepmother to Craddock's young daughter.

things, harassing K.J. and "committing acts of abuse or threats of abuse" against K.J. The protection order also prohibited Craddock from coming within 500 feet of K.J. "wherever" K.J. "may be found" or "any place" that Craddock "knows or should know" K.J. was "likely to be." This would include, for instance, K.J.'s residence.

{¶ 3} On March 6, 2024, a complaint was filed charging Craddock with violating the above-referenced protection order. The charge arose after it was alleged Craddock had violated the terms of the protection order by having contact with and harassing K.J. on the evening of February 25, 2024. Specifically, the complaint alleged:

> Prior to an official escort by Deputy Wesslin[e], the defendant entered into the protected area set forth by the protection order. During the escort, the defendant harassed the protected parties and had to be told by the on scene deputy to leave the immediate area and go to her car/sidewalk.

{¶ 4} The matter proceeded to a bench trial held on July 23, 2024. During trial, the trial court heard testimony and took evidence from two witnesses, K.J. and Deputy Wessline. The following is a summary of that trial testimony and evidence.

{¶ 5} On the evening February 25, 2024, Craddock was scheduled to pick up her daughter, H.J., from K.J. at the Blue Ash Police Department. The scheduled pickup time was 6:00 p.m. Craddock did not show. Rather, at approximately 7:00 p.m., Craddock appeared at K.J.'s residence with a police escort, Deputy Wessline. Craddock, while being escorted up to K.J.'s front door by Deputy Wessline, then contacted K.J. This contact was made, according to K.J.'s testimony, for Deputy Wessline "[b]asically to mediate the thing . . ." However, as K.J. testified, rather than having Deputy Wessline mediate, Craddock was instead "sitting behind the officer laughing and smiling, videotaping me, and then proceeded to make harassing comments during the – at spots." This included Craddock yelling out that K.J. was a diagnosed schizophrenic, an outburst that prompted Deputy Wessline to order Craddock back to her vehicle parked in K.J.'s

driveway. Once there, the record indicates that Craddock "screamed" at K.J. "from her car a couple more times" before eventually leaving the scene. This was done all contrary to Deputy Wessline's order that Craddock not "engage or anything" with K.J., to "try to keep a civil tongue" with K.J., and "just be adults."

**{¶ 6}** The trial court, upon hearing the above testimony and evidence, issued its verdict finding Craddock guilty as charged. In so doing, the trial court stated:

> [Y]ou being present at the house, in and of itself, is not the violation. The violation occurred when there was extraneous communication when you were there. You were given clear instructions by the Deputy, do not initiate the conversation and do not – I want to get it right – do not engage. Two clear instructions. Had you followed them, we wouldn't be here. Okay. Or if we're here, it'd be a pretty easy not guilty.
>
> But you making that comment about the complaining witness, [K.J.], that she's diagnosed, and she – all that – that – that was way beyond and that was contact that was in – reckless, for sure, and this was in violation of the protection order clearly. All right.

**{¶ 7}** Upon the trial court issuing its verdict, the matter then proceeded to sentencing. At sentencing, the trial court ordered Craddock to serve one year of basic probation. The trial court also ordered Craddock to spend 180 days in jail, with 175 of those days suspended, and for Craddock to pay a $300 fine plus court costs.[2] Shortly thereafter, on August 22, 2024, Craddock filed a notice of appeal. Following briefing, on May 14, 2025, the matter was submitted to this court for consideration. Craddock's appeal now properly before this court for decision, Craddock has raised one assignment of error for review.

**{¶ 8}** THE TRIAL COURT ERRED TO DEFENDANT-APPELLANT AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND IN ABSENCE OF COMPETENT

---

2. The trial court stayed Craddock's sentence pending this appeal.

CREDIBLE EVIDENCE FOUND THE DEFENDANT GUILTY.

{¶ 9} In her single assignment of error, Craddock argues the trial court's decision finding her guilty of violating a protection order was not supported by sufficient evidence and was against the manifest weight of the evidence. We disagree.

{¶ 10} A claim challenging the sufficiency of the evidence "requires a determination as to whether the state has met its burden of production at trial." *State v. Boles*, 2013-Ohio-5202, ¶ 34 (12th Dist.). When making such a determination, "[t]he relevant inquiry is 'whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *State v. Roper*, 2022-Ohio-244, ¶ 39 (12th Dist.), quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. When conducting this review, "appellate courts do not assess whether the prosecution's evidence is to be believed but whether, if believed, the evidence supports the conviction." *State v. Carter*, 2018-Ohio-29, ¶ 7 (8th Dist.), citing *State v. Yarbrough*, 2002-Ohio-2126, ¶ 79-80. Therefore, when reviewing whether a trial court's verdict finding the defendant guilty was supported by sufficient evidence, "[t]his court merely determines whether there exists any evidence in the record that the trier of fact could have believed, construing all evidence in favor of the state, to prove the elements of the crime beyond a reasonable doubt." *State v. Brummett*, 2024-Ohio-2332, ¶ 9 (12th Dist.).

{¶ 11} "Unlike the sufficiency-of-the-evidence standard of review," which, as noted above, addresses the state's burden of production, "'a manifest-weight-of-the-evidence standard of review applies to the state's burden of persuasion.'" *State v. Casey*, 2024-Ohio-689, ¶ 10 (12th Dist.), quoting *State v. Messenger*, 2022-Ohio-4562, ¶ 26. "To determine whether a conviction is against the manifest weight of the evidence, this court must look at the entire record, weigh the evidence and all reasonable inferences, consider

the credibility of the witnesses, and determine whether in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Lewis*, 2020-Ohio-3762, ¶ 18, (12th Dist.), citing *State v. Wilks*, 2018-Ohio-1562, ¶ 168. But, even then, a determination regarding the witnesses' credibility is primarily for the trier of fact to decide. *State v. Baker*, 2020-Ohio-2882, ¶ 30 (12th Dist.), citing *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus. This is because the trial court, as trier of fact, is in the best position to weigh the credibility of the witnesses and the weight to be given the evidence. *State v. Brown*, 2025-Ohio-500, ¶ 30 (12th Dist.). Therefore, given that it is primarily the trier of fact who decides witness credibility, this court will overturn a conviction on manifest-weight grounds "only in extraordinary circumstances when the evidence presented at trial weighs heavily in favor of acquittal." *State v. Kaufhold*, 2020-Ohio-3835, ¶ 10 (12th Dist.).

{¶ 12} As noted above, Craddock was found guilty of violating a protection order in violation of R.C. 2919.27(A)(2). That statute generally prohibits the reckless violation of an order of protection. *State v. Hollinsworth*, 2007-Ohio-2698, ¶ 8 (12th Dist.). Specifically, pursuant to R.C. 2919.27(A)(2), "[n]o person shall recklessly violate the terms of . . . [a] protection order issued pursuant to section 2151.34, 2903.213, or 2903.214 of the Revised Code." "A person acts recklessly when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that the person's conduct is likely to cause a certain result or to be of a certain nature." R.C. 2901.22(C). "A person is reckless with respect to circumstances when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that such circumstances are likely to exist." *Id.* Therefore, as noted by the Ohio Supreme Court, "to sustain a conviction for a violation of a protection order pursuant to

R.C. 2919.27(A)(2), the state must establish, beyond a reasonable doubt, that it served the defendant with the order before the alleged violation." *State v. Smith*, 2013-Ohio-1698, ¶ 28.

{¶ 13} In this case, there is no dispute that the protection order that Craddock was alleged to have violated had been issued pursuant to R.C. 2903.214 and served upon Craddock before the alleged violation occurred. There is also no dispute that the protection order prohibited Craddock from harassing K.J. and "committing acts of abuse or threats of abuse" against K.J. The record in this case clearly indicates that Craddock did just that. That is to say, the record clearly indicates that Craddock violated the protection order issued against her when she acted unnecessarily upon approaching K.J.'s front door and, while standing behind Deputy Wessline, mockingly smiled at K.J., video recorded K.J. without her consent, and yelled out derogatory comments towards K.J. This included Craddock screaming out that K.J. had been diagnosed as a schizophrenic. Therefore, while we render no opinion as to whether Craddock violated the protection order issued against her by merely coming onto K.J.'s property with Deputy Wessline, Craddock clearly violated the protection order by engaging in unnecessarily egregious behavior upon entering onto K.J.'s property and making derogatory comments towards K.J. after being told by Deputy Wessline not to "engage or anything" with her. Accordingly, because we find Craddock's conviction was supported by sufficient evidence and not against the manifest weight of the evidence, Craddock's single assignment of error lacks merit and is overruled.

{¶ 14} Judgment affirmed.

HENDRICKSON, P.J., and BYRNE, J., concur.